CLINE, DISTRICT ATTORNEY, *v.* FRINK DAIRY COMPANY ET AL.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO.

No. 304.   Argued April 29, 1927.—Decided May 31, 1927.

1. A federal court of equity may enjoin state criminal proceedings under a statute alleged to be unconstitutional when their prevention is essential to the safeguarding of rights of property, and when the circumstances are exceptional and the danger of irreparable loss is both great and immediate. P. 451.
2. The injunction can not be supported, however, in so far as it embraces proceedings pending in the state criminal court which were instituted before the suit was begun. P. 452.
3. The Due Process Clause of the Fourteenth Amendment imposes upon the States the obligation of so framing their criminal statutes that those to whom they are addressed may know what standard of conduct is intended to be required. P. 458.
4. The Colorado Anti-Trust Law denounces and punishes conspiracies and combinations, in restraint of trade; to fix prices; prevent competition, etc.; except when necessary in order to enable participants to obtain a reasonable profit from products dealt in, etc. *Held* that the exception leaves the statute without a fixed standard of guilt rendering it void. P. 453.

Reversed in part; affirmed in part.

APPEAL from a decree of the District Court, three judges sitting, permanently enjoining the appellant District Attorney from enforcing the Colorado Anti-Trust Law against the plaintiff dairy corporations and individuals.

*Mr. Jean S. Breitenstein,* with whom *Messrs. William L. Boatright, Paul M. Segal,* and *A. L. Betke* were on the brief, for appellant.

Federal courts do not enjoin the further prosecution of pending criminal cases in state courts. Rev. Stats., § 720; Jud. Code, § 265. It is contrary to the rules of equity. *Essanay Mfg. Co.* v. *Kane,* 258 U. S. 358, and cases cited. The proceeding in the Colorado court was pending and set for trial at the time the suit was instituted in the court below. See *Ex parte Sawyer,* 124 U. S. 200; Story, Eq. Jurisprudence, § 893; *Harkrader* v. *Wadley,* 172 U. S. 148; *Fitts* v. *McGee,* 172 U. S. 516; *Ex parte Young,* 209 U. S. 123, 162; *Davis Mfg. Co.* v. *Los Angeles,* 189 U. S. 207.

The Colorado Anti-Trust Law does not violate the equal protection of the laws clause of the Fourteenth Amendment by exempting labor and agricultural products. *Int. Harvester Co.* v. *Missouri,* 234 U. S. 199, 210; *Duplex Co.* v. *Deering,* 254 U. S. 443, 469.

Public policy requires the exemption of coöperative marketing associations from anti-trust laws. *Rifle Potato Growers* v. *Smith,* 78 Colo. 171; *Nor. Wis. Tobacco Pool* v. *Bekkedal,* 182 Wis. 571.

Neither does it violate the Fourteenth Amendment on the ground that it fails to establish an ascertainable standard of guilt. A state statute is not unconstitutional because wanting in certainty when the provisions complained of as uncertain employ words or phrases having a well settled common-law meaning, notwithstanding an element of degree in the definition as to which estimates might differ. *Connally* v. *Gen. Const. Co.,* 269 U. S. 385; *Hygrade Prov. Co.* v. *Sherman,* 266 U. S. 497; *Nash* v. *United States,* 229 U. S. 373. The proviso here complained of is merely a legislative declaration of the rule of reason laid down by Chief Justice White in the *Standard Oil Co.,* case, 221 U. S. 1, 60–65, for the interpretation

and application of the Sherman Anti-Trust Law. It is plain that combinations which come within this proviso would not be against a public policy or in restraint of trade and hence would not be indictable either under the common law or under the Sherman Act, while combinations which do not come within this exception are illegal because in restraint of trade and against public policy.

The Colorado legislature has merely attempted to incorporate the standard laid down by the common law, and established by this Court to guide prosecutions under the Sherman Act. The Colorado Supreme Court has so interpreted this law. *Campbell* v. *People,* 72 Colo. 213. It is settled that an anti-trust law dependent upon such rule of reason can be the basis of a criminal prosecution. *Nash* v. *United States,* 229 U. S. 373; *Waters Oil Co.* v. *Texas,* 212 U. S. 86, 109. Distinguishing, *United States* v. *Cohen Grocery Co.,* 255 U. S. 81; *Int. Harvester Co.* v. *Kentucky,* 234 U. S. 216.

*Messrs. Hudson Moore* and *Ernest B. Fowler,* with whom *Mr. A. J. Fowler* was on the brief, for appellees.

A criminal statute must define the crime with certainty and furnish an ascertainable standard of guilt to guide and inform the public what it is their duty to avoid, and if the statute fails to do this, and delegates to a jury the fixing of the test or standard, it is lacking in due process, unconstitutional, and void. *Connally* v. *Gen. Const. Co.,* 269 U. S. 385; *United States* v. *Trenton Potteries Co.,* 273 U. S. 392; *Yu Cong Eng* v. *Trinidad,* 271 U. S. 500; *United States* v. *Cohen Grocery Co.,* 255 U. S. 81; *Int. Harvester Co.* v. *Kentucky,* 234 U. S. 216; *Collins* v. *Kentucky,* 234 U. S. 634; *United States* v. *Reese,* 92 U. S. 214; *United States* v. *Brewer,* 139 U. S. 278; *Tozer* v. *United States,* 52 Fed. 917; *L. & N. Ry. Co.* v. *R. R. Comm.,* 19 Fed. 679; *Railway Co.* v. *Dey,* 35 Fed. 866; *L. & N. Ry.*

*Co.* v. *Commonwealth,* 99 Ky. 132; *Hayes* v. *State,* 11 Ga. App. 371. Distinguishing, *Nash* v. *United States,* 229 U. S. 373; *Waters Oil Co.* v. *Texas,* 212 U. S. 86.

The Colorado Anti-Trust Act sets up a new test or standard of criminality which was unknown to the common law. There are no decisions furnishing any standard or test to determine what is a reasonable profit. It is one thing to determine whether a given course of action constitutes a reasonable restraint of trade, while it is quite another thing to determine whether or not a reasonable profit has been made.

The act denies appellees the equal protection of the laws. *Connolly* v. *Union Pipe Co.,* 183 U. S. 540. The holding in this case has been repeatedly approved in subsequent decisions of this court. *Cox* v. *Texas,* 202 U. S. 446; *Ozan Lumber Co.* v. *Bank,* 207 U. S. 251; *Int. Harvester Co.* v. *Missouri,* 234 U. S. 199; *Otis* v. *Gassman,* 187 U. S. 606; *Billings* v. *Illinois,* 188 U. S. 97; *Missouri* v. *Dockery,* 191 U. S. 165; *Dobbins* v. *Los Angeles,* 195 U. S. 223; *Cook* v. *Marshall Co.,* 196 U. S. 261; *Halter* v. *Nebraska,* 205 U. S. 34; *Cont. Paper Co.* v. *Voight,* 212 U. S. 227; *Singer Co.* v. *Brickell,* 233 U. S. 305; *Truax* v. *Corrigan,* 257 U. S. 312; *Radice* v. *New York,* 264 U. S. 292.

A federal court will enjoin the enforcement of an unconstitutional state statute where property rights are invaded. *Tyson* v. *Banton,* 273 U. S. 418; *Packard* v. *Banton,* 264 U. S. 140; *Terrace* v. *Thompson,* 263 U. S. 197; *Truax* v. *Raich,* 239 U. S. 33; *Philadelphia* v. *Stimson,* 223 U. S. 605; *Ex parte Young,* 209 U. S. 123; *Dobbins.* v. *Los Angeles,* 195 U. S. 223; *Davis* v. *Los Angeles,* 189 U. S. 207; *Reagan* v. *Farmers L. & T. Co.,* 154 U. S. 362. Distinguishing, *Essanay Mfg. Co.* v. *Kane,* 258 U. S. 358; *Fenner* v. *Boykin,* 271 U. S. 240; *Harkrader* v. *Wadley,* 172 U. S. 148; *Ex parte Young,* 209 U. S. 123.

Under the issues made by the pleadings, the right to enjoin the pending proceeding is not before the court. *Connally* v. *Gen. Const. Co.,* 269 U. S. 385; *Gen. Inv. Co.* v. *Lake Shore Ry.,* 250 Fed. 160; *Livingston* v. *Storey,* 9 Pet. 632; *Pacific R. R. Co.* v. *Mo. Pacific R. R.,* 111 U. S. 509; *Stewart* v. *Masterson,* 131 U. S. 151. As the bill stated a cause of action for relief against the threatened activities of appellant, there was no error in the lower court's denial of the motion to dismiss. The further question of whether or not the lower court should enjoin him from prosecuting the pending criminal proceeding was not an issue raised by the general motion to dismiss and is not a question to be determined by this Court, upon appeal.

Mr. Chief Justice Taft delivered the opinion of the Court.

This is a direct appeal under § 238 of the Judicial Code, as amended by the Act of February 13, 1925, c. 229, 43 Stat. 936, from a final decree of the United States District Court of Colorado, three Judges sitting, granting a permanent injunction against the enforcement by a state officer of a state law, on the ground of its unconstitutionality. The bill was brought by the Frink Dairy Company, the Windsor Farm Dairy Company and the Climax Dairy Company, corporations of Colorado, and H. Brown Cannon, Clarence Frink, A. T. McClintock and Morris Robinson, citizens and residents of the same State, against Foster Cline, the District Attorney for the City and County of Denver, Colorado.

The bill alleges that the suit involves for decision the question of the validity under the Constitution of the United States of what is known as the Colorado Anti-Trust Act, being chapter 161 of the Session Laws of the State of Colorado, for 1913, approved April 17th of that

year. It avers that the three dairy companies have been separately conducting for years, in Denver, Colorado, and its vicinity, the sale and distribution of milk, butter and all manner of dairy products; that each has invested in its business more than $100,000; that they are also engaged in interstate commerce, buying and selling from without the limits of the State; that the individual plaintiffs, Cannon, Frink and Morrison, are respectively officers and stockholders of the three plaintiff companies; that McClintock, the other individual plaintiff, is an officer and stockholder of the Beatrice Creamery Company, a corporation of Delaware, also in the dairy business in Denver; that the individual plaintiffs, experienced dairymen, by painstaking effort, fair dealing, and careful management, have gained thousands of customers, and a well-established trade, and that their companies, in addition to their tangible property and assets, have good wills of great value. The bill sets out in full the Colorado Anti-Trust law, which punishes as a crime combinations of persons and corporations to restrain trade or commerce, with certain exceptions, and makes it the duty of the defendant, the District Attorney, to prosecute alleged violations thereof and to institute actions for forfeiture of charters of associations engaged therein. All contracts violating the act are avoided; violation of the act is made a good defense to a suit for merchandise that was sold in pursuance of a combination under it; and a right of action for damages against the combiners is given to any one injured by the combination. One charge of the bill, among others, is that the act violates the Fourteenth Amendment of the Constitution, in that it deprives the plaintiffs of their liberty without due process of law, because it is indefinite and uncertain and fails to fix any informing standard of criminality.

The bill alleges that Foster Cline, the defendant, in his capacity as district attorney of Denver City and

County, has been, and still is, claiming that the plaintiffs and their competitors have been and now are acting in violation of the Anti-Trust law; that he has caused an information to be filed in the criminal division of the District Court of the City and County of Denver, in which the plaintiffs and the Beatrice Creamery Company, a Delaware corporation, are charged with conspiracy to violate the Anti-Trust Act; that he expects to press the case to trial; that, since the case was instituted, the grand jury has been in session and many witnesses summoned and questioned about the plaintiffs' milk business; that the defendant Cline has threatened, and unless restrained by the court will institute, further prosecutions, file further informations and attempt to procure indictments of the plaintiffs by the grand jury; and that Cline, by this multiplicity of criminal suits and prosecutions, as well as by the civil suits for forfeiture of the corporate plaintiffs' charters he has threatened to bring, has already inflicted serious loss to the businesses and properties of the plaintiffs, and that they will be irreparably and immeasurably damaged thereby unless he is restrained.

A motion to dismiss was made by the defendant, on the ground that the bill presented no case for equitable relief. On the hearing before the three judges, a preliminary injunction was issued and the motion to dismiss was denied. The defendant standing upon his motion to dismiss, and declining to plead further, a decree for a permanent injunction was entered, and this is an appeal from that decree.

The first question is whether the practice and precedents in equity justified the granting of relief by injunction, where one criminal prosecution had been begun and where many others, together with suits for forfeiture of corporate franchises, were threatened. The general rule is that a court of equity is without jurisdiction to restrain criminal proceedings to try the same right that is in issue

before it; but an exception to this rule exists when the prevention of such prosecutions under alleged unconstitutional enactments is essential to the safeguarding of rights of property, and when the circumstances are exceptional and the danger of irreparable loss is both great and immediate. *Fenner* v. *Boykin,* 271 U. S. 240, 243; *Packard* v. *Banton,* 264 U. S. 140; *Hygrade Provision Co.* v. *Sherman,* 266 U. S. 497, 502; *Terrace* v. *Thompson,* 263 U. S. 197, 214; *Ex parte Young,* 209 U. S. 123; *Davis & Farnum Mfg. Co.* v. *Los Angeles,* 189 U. S. 207, 218; *Dobbins* v. *Los Angeles,* 195 U. S. 223, 236, 241; *In re Sawyer,* 124 U. S. 200, 209, 211.

The affidavits in support of the bill were very full in their showing that the District Attorney, by his action and threats, had already greatly injured the plaintiffs' properties and their businesses. They present a case in which the question of the validity of the Act under which, if invalid, great injuries to properties and businesses are being unjustly inflicted, should be promptly settled. We think the basis for equitable jurisdiction is made sufficiently clear.

It is objected, however, that the injunction can not be supported under the authorities, in so far as it is directed against actual proceedings pending in the criminal court. One of the District Judges below dissented from this part of the decree. Of course the injunction is not only against actual prosecution but is also against a multiplicity of future suits and the threatened proceedings for forfeiture, by which the District Attorney proposes to end the businesses of all the plaintiffs, and the objection would only lead to a narrowing of the decree. The majority in the District Court were influenced by a remark of this Court in *Davis & Farnum Company* v. *Los Angeles, supra,* in speaking of a bill to restrain invasion of rights of property by the enforcement of an unconstitutional law, in which the Court said:

" It would seem that, if there were jurisdiction in a court of equity to enjoin the invasion of property rights through the instrumentality of an unconstitutional law, that jurisdiction would not be ousted by the fact that the State had chosen to assert its power to enforce such law by indictment or other criminal proceeding."

This *semble* does not seem to have received the approval of the Court in *Ex parte Young,* 209 U. S. 123, where it was said:

" It is further objected (and the objection really forms part of the contention that the State cannot be sued) that a court of equity has no jurisdiction to enjoin criminal proceedings, by indictment or otherwise, under the state law. This, as a general rule, is true. But there are exceptions. When such indictment or proceeding is brought to enforce an alleged unconstitutional statute, which is the subject matter of inquiry in a suit already pending in a Federal court, the latter court having first obtained jurisdiction over the subject matter, has the right, in both civil and criminal cases, to hold and maintain such jurisdiction, to the exclusion of all other courts, until its duty is fully performed. *Prout* v. *Starr,* 188 U. S. 537, 544. But the Federal court cannot, of course, interfere in a case where the proceedings were already pending in a state court. *Taylor* v. *Taintor,* 16 Wall. 366, 370; *Harkrader* v. *Wadley,* 172 U. S. 148."

We, therefore, agree with the view of the dissenting Judge that the injunction is too broad, in so far as it restrains proceedings actually pending, and that it must be accordingly modified.

This brings us to the consideration of the constitutionality of the Anti-Trust Act. We think that the act is so vague and uncertain in its description of what shall constitute its criminal violations that it is invalid under the Fourteenth Amendment. It in this respect violates due process and can not be distinguished from the case

of *United States* v. *Cohen Grocery Company*, 255 U. S. 81. The law there under consideration was the fourth section of the Lever Act, re-enacted in 1919, Act of October 22, 1919, c. 80, § 2, 41 Stat. 297. It provided as follows:

" That it is hereby made unlawful for any person willfully . . . to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries; to conspire, combine, agree, or arrange with any other person . . . to exact excessive prices for any necessaries . . . Any person violating any of the provisions of this section upon conviction thereof shall be fined not exceeding $5,000 or be imprisoned for not more than two years, or both."

This Court said:

" The sole remaining inquiry, therefore, is the certainty or uncertainty of the text in question, that is, whether the words ' That it is hereby made unlawful for any person willfully . . . to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries,' constituted a fixing by Congress of an ascertainable standard of guilt and are adequate to inform persons accused of violation thereof of the nature and cause of the accusation against them. That they are not, we are of opinion, so clearly results from their mere statement as to render elaboration on the subject wholly unnecessary. Observe that the section forbids no specific or definite act. It confines the subject-matter of the investigation which it authorizes to no element essentially inhering in the transaction as to which it provides. It leaves open, therefore, the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against. In fact, we see no reason to doubt the soundness of the observation of the court below, in its opinion, to the effect

that, to attempt to enforce the section would be the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury."

The opinion cites in support of its conclusion, *United States* v. *Reese*, 92 U. S. 214, 219–220; *United States* v. *Brewer*, 139 U. S. 278, 288; *Todd* v. *United States*, 158 U. S. 278, 282; *United States* v. *Sharp*, 27 Fed. Cases, 1041, 1043; *Chicago & Northwestern Ry. Co.* v. *Dey*, 35 Fed. 866, 876; *Tozer* v. *United States*, 52 Fed. 917, 919–920; *United States* v. *Capital Traction Co.*, 34 App. D. C. 592; *United States* v. *Pennsylvania R. R. Co.*, 242 U. S. 208, 237–238; also *International Harvester Company* v. *Kentucky*, 234 U. S. 216, 221; *Collins* v. *Kentucky*, 234 U. S. 634, 637; *American Seeding Machine Company* v. *Kentucky*, 236 U. S. 660, 662.

The Colorado Anti-Trust law denounces conspiracies and combinations of persons and corporations, 1st, to create and carry out restrictions in trade or commerce preventing the full and free pursuit of any lawful business in the State; 2d, to increase or reduce the price of merchandise, products or commodities; 3rd, to prevent competition in the making, transportation, sale or purchase of commodities or merchandise; 4th, to fix any standard of figures whereby the price shall be controlled or established; 5th, to make or execute any contract or agreement to bind the participants not to sell below a common standard, or to keep the price of the article at a fixed or graded figure, or establish or settle the price between themselves so as to preclude a free and unrestricted competition among themselves, or to pool, combine or unite any interest they may have in such business of making, selling or transporting that the price of the article may be affected. The foregoing language sufficiently describes

for purposes of a criminal statute the acts which it intends
to punish; but the Colorado law does not stop with that:
it is accompanied by two provisos which materially affect
its purport and effect.    They are as follows:

"And all such combinations are hereby declared to be
against public policy, unlawful and void; provided that
no agreement or association shall be deemed to be unlaw-
ful or within the provisions of this act, the object and
purposes of which are to conduct operations at a reason-
able profit or to market at a reasonable profit those prod-
ucts which can not otherwise be so marketed; provided
further that it shall not be deemed to be unlawful, or
within the provisions of this act, for persons, firms, or
corporations engaged in the business of selling or manu-
facturing commodities of a similar or like character to
employ, form, organize or own any interest in any asso-
ciation, firm, or corporation having as its object or pur-
pose the transportation, marketing or delivering of such
commodities;  .  .  .  "

The effect of the first proviso is that combinations,
with the purposes defined in the 1st, 2nd, 3rd, 4th and 5th
paragraphs of § 1, and declared thereby to be unlawful
and void, are not to be regarded as unlawful if their pur-
pose shall be to obtain only a reasonable profit in such
products or merchandise as can not yield a reasonable
profit except by marketing them under the combinations
previously condemned.    The second is like the first in
declaring that it shall not be unlawful or within the con-
demnatory provisions of the Act for persons engaged in
the business of selling or manufacturing commodities of
a class that can only be dealt with at a reasonable profit
by such previously condemned trust methods, to employ
or own interests in an association having as its object the
transportation, marketing or delivering of such commodi-
ties at a reasonable profit.    These provisos make the line

between lawfulness and criminality to depend upon, first what commodities need to be handled according to the trust methods condemned in the first part of the Act to enable those engaged in dealing in them to secure a reasonable profit therefrom; second, to determine what generally would be a reasonable profit for such a business; and third, what would be a reasonable profit for the defendant under the circumstances of his particular business. It would, therefore, be a complete defense for the defendant to prove in this case that it is impossible to sell milk or milk products, except by trust methods and make a reasonable profit, if he also showed that by such methods he had in fact only made a reasonable profit.

We have examined the opinions of the Supreme Court of Colorado in reference to the construction and operation of these provisos in the Colorado Anti-Trust law. *Campbell* v. *The People,* 72 Colo., 213; *Johnson* v. *The People, Id.,* 218; *People* v. *Apostolos,* 73 Colo., 71; and we find nothing there which is in conflict with our construction of them. Such an exception in the statute leaves the whole statute without a fixed standard of guilt in an adjudication affecting the liberty of the one accused. An attempt to enforce the section will be to penalize and punish all combinations in restraint of trade in a commodity when in the judgment of the court and jury they are not necessary to enable those engaged in it to make it reasonably profitable, but not otherwise. Such a basis for judgment of a crime would be more impracticable and complicated than the much simpler question in the *Cohen Grocery* case, whether a price charged was unreasonable or excessive. The real issue which the proviso would submit to the jury would be legislative, not judicial. To compel defendants to guess on the peril of an indictment whether one or more of the restrictions of the statute will destroy all profit or

reduce it below what would be reasonable, would tax the human ingenuity in much the same way as that which this Court refused to allow as a proper standard of criminality in *International Harvester Company* v. *Kentucky,* 234 U. S. 216, 232, 233.

The *Cohen* case was a violation of a federal law and involved the Fifth and Sixth Amendments, the first providing that no person shall be deprived of life, liberty or property without due process of law, and the second that in all criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusation. We are now considering a case of state legislation and threatened prosecutions in a state court where only the Fourteenth Amendment applies; but that amendment requires that there should be due process of law, and this certainly imposes upon a State an obligation to frame its criminal statutes so that those to whom they are addressed may know what standard of conduct is intended to be required. And such is the effect of our cases. *Connally* v. *General Construction Company,* 269 U. S. 385; *International Harvester Company* v. *Kentucky,* 234 U. S. 216; *Collins* v. *Kentucky,* 234 U. S. 634; *American Seeding Machine Company* v. *Kentucky,* 236 U. S. 660; *Waters-Pierce Oil Company* v. *Texas,* 212 U. S. 86; *Fox* v. *Washington,* 236 U. S. 273; *Omaechevarria* v. *Idaho,* 246 U. S. 343; *Miller* v. *Strahl,* 239 U. S. 426; *Tedrow* v. *Lewis & Son. Co.,* 255 U. S. 98; *Weeds, Inc.* v. *United States,* 255 U. S. 109, and *Kinnane* v. *Detroit Creamery Co.,* 255 U. S. 102.

In the latest of the foregoing cases, *Connally* v. *General Construction Company,* 269 U. S. 385, 391, the validity of a statute of Oklahoma providing that not more than the current rate of per diem wages in the locality where the work was performed should be paid to laborers, workmen, mechanics, prison guards, janitors in public institutions or other persons so employed by and on behalf

of the State, was before us.  We held that the provision contained no ascertainable standard of guilt—that it could not be determined with any degree of certainty what sum constituted a current wage in such locality because the term locality under the circumstances of that case was fatally vague and uncertain.  We said (p. 391):

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law.  And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.  . . .

"The question whether given legislative enactments have been thus wanting in certainty has frequently been before this court.  In some of the cases the statutes involved were upheld; in others, declared invalid.  The precise point of differentiation in some instances is not easy of statement.  But it will be enough for present purposes to say generally that the decisions of the court upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, *Hygrade Provision Co.* v. *Sherman,* 266 U. S. 497, 502; *Omaechevarria* v. *Idaho,* 246 U. S. 343, 348, or a well-settled common law meaning, notwithstanding an element of degree in the definition as to which estimates might differ, *Nash* v. *United States,* 229 U. S. 373, 376; *International Harvester Co.* v. *Kentucky, supra,* p. 223, or, as broadly stated by Mr. Chief Justice White in *United States* v. *Cohen Grocery Co.,* 255 U. S. 81, 92, 'that, for reasons found to result either from the text

of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded.' '''

The chief authority upon which counsel for the appellant rely is the case of *Nash* v. *United States,* 229 U. S. 373, 376. That case involved the question whether the Sherman Anti-Trust law, in making criminal every contract and all monopolies in restraint of interstate trade or commerce, fixed a permissible and ascertainable standard of guilt. It was held that it did. Because this Colorado act is an anti-trust law punishing with even more detail of description all combinations in restraint of trade in Colorado, with the excepting provisos, it is supposed that the *Nash* case has direct application and supports the claim of validity for the Act. It is first to be noted that the Court, in its consideration of the *Cohen* case, had before it the *Nash* case, and found nothing in that case inconsistent with its *Cohen* case ruling.

In the *Nash* case we held that the common law precedents as to what constituted an undue restraint of trade were quite specific enough to advise one engaged in interstate trade and commerce what he could and could not do under the statute. In commenting on and affirming the *Nash* case, this Court said in *International Harvester Company* v. *Kentucky,* 234 U. S. 216, 223:

" The conditions are as permanent as anything human, and a great body of precedents on the civil side coupled with familiar practice make it comparatively easy . . . to keep to what is safe."

The common law precedents as to forbidden and permissible restraints of trade were reviewed at great length by the Circuit Court of Appeals of the Sixth Circuit in a case under the federal Anti-Trust Act, in *United States* v. *Addyston Pipe Company,* 85 Fed. 271. It subsequently came to this Court, and is reported in the 175th United States, 211. The Federal Anti-Trust Act declares every contract, combination in the form of trust or other-

wise, or conspiracy in restraint of interstate trade to be illegal and every one taking part in it to be guilty of a misdemeanor.    In *United States* v. *Trans-Missouri Freight Association,* 166 U. S. 290 and *United States* v. *Joint Traffic Association,* 171 U. S. 505, the opinions of the Court left the impression among many that every contract in restraint of trade, no matter whether lawful and reasonable or void and unenforceable at common law, was within the penalty of the statute.    Such a conclusion was not necessary to the decision, and it was quite evident when the opinions were analyzed that it was recognized in their text that there were incidental restraints of trade that the statute was not intended to cover.    This was made clear by the later decision in *Cincinnati Packet Company* v. *Bay,* 200 U. S. 179.    The view was fully confirmed in *Standard Oil Company* v. *United States,* 221 U. S. 1, and *United States* v. *American Tobacco Company,* 221 U. S. 106, where the language of the Federal statute was read in the light of the common law, and in accordance with its reason, and was construed not to penalize such partial restraints of trade as at common law were not only permitted but were promoted in the interest of the freedom of trade itself.

The review of the many common law precedents as to due and undue restraints of trade shows that in only one or two cases, and those not well considered, was there left to the court or jury as a criterion of the validity of a restraint of trade the reasonableness of the prices fixed or the profit realized under it.

In the *Addyston* case, *supra,* which involved a scheme for fixing prices, this Court quoted with approval the following passage from the lower court's opinion (85 Fed. 271, 293):

"    .   .   : the affiants say that, in their opinion, the prices at which pipe has been sold by defendants have been reasonable.    We do not think the issue an impor-

tant one, because, as already stated, we do not think that at common law there is any question of reasonableness open to the courts with reference to such a contract."

In the same case the Circuit Court of Appeals, referring to cases in restraint of trade, said (pp. 283 and 284):

. "But these cases all involved contracts in which the covenant in restraint of trade was ancillary to the main and lawful purpose of the contract, and was necessary to the protection of the covenantee in the carrying out of that main purpose. They do not manifest any general disposition on the part of the courts to be more liberal in supporting contracts having for their sole object the restraint of trade than did the courts of an earlier time. It is true that there are some cases in which the courts, mistaking, as we conceive, the proper limits of the relaxation of the rules for determining the unreasonableness of restraints of trade, have set sail on a sea of doubt, and have assumed the power to say, in respect to contracts which have no other purpose and no other consideration on either side than the mutual restraint of the parties, how much restraint of competition is in the public interest, and how much is not.

"The manifest danger in the administration of justice according to so shifting, vague, and indeterminate a standard would seem to be a strong reason against adopting it."

This same view, when directed to the question of judging restraints of trade by reference to reasonableness of prices effected by the restraint is confirmed by the latest decision of this Court on the subject in *United States* v. *Trenton Potteries Company*, 273 U. S. 392, where it was said:

"The aim and result of every price-fixing agreement, if effective, is the elimination of one form of competition. The power to fix prices, whether reasonably exercised or not, involves power to control the market and to fix arbitrary and unreasonable prices. The reasonable price fixed

today may through economic and business changes become the unreasonable price of tomorrow. Once established, it may be maintained unchanged because of the absence of competition secured by the agreement for a price reasonable when fixed. Agreements which create such potential power may well be held to be in themselves unreasonable or unlawful restraints, without the necessity of minute inquiry whether a particular price is reasonable or unreasonable as fixed and without placing on the government in enforcing the Sherman Law the burden of ascertaining from day to day whether it has become unreasonable through the mere variation of economic conditions. Moreover, in the absence of express legislation requiring it, we should hesitate to adopt a construction making the difference between legal and illegal conduct in the field of business relations depend upon so uncertain a test as whether prices are reasonable—a determination which can be satisfactorily made only after a complete survey of our economic organization and a choice between rival philosophies."

This review, showing what was the standard of criminality in the Federal Anti-Trust law, indicates clearly that the decision in the *Cohen Grocery* case was not inconsistent with the *Nash* case, because the latter did not relate to the reasonableness or excessiveness of prices charged for necessaries, without more, as a basis for criminality, while the former plainly did. The same reasons show that there is nothing inconsistent between the *Cohen* case and that of *Waters-Pierce Oil Company* v. *Texas,* 212 U. S. 86.

The principle of due process of law requiring reasonable certainty of description in fixing a standard for exacting obedience from a person in advance has application as well in civil as in criminal legislation, *Small Company* v. *American Sugar Refining Company,* 267 U. S. 233, 238, *et seq.;* but the fact that it is often necessary to investi-

gate and decide certain questions in civil cases is not controlling or persuasive as to whether persons may be held to civil or criminal liability for not deciding them rightly in advance. On questions of confiscatory rates for public utilities, for instance, courts must examine in great detail the circumstances and reach a conclusion as to a reasonable profit. But this does not justify in such a case holding the average member of society in advance to a rule of conduct measured by his judgment and action in respect to what is a reasonable price or a reasonable profit. It is true that, on an issue like negligence, i. e., a rule of conduct for the average man in the avoidance of injury to his neighbors, every one may be held to observe it either on the civil or criminal side of the court. It is a standard of human conduct which all are reasonably charged with knowing and which must be enforced against every one in order that society can safely exist. We said in the *Nash* case (p. 377), " But apart from the common law as to restraint of trade thus taken up by the statute the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death. 'An act causing death may be murder, manslaughter, or misadventure according to the degree of danger attending it ' by common experience in the circumstances known to the actor. . . . ' The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' 1 East P. C. 262 ". Following the authority in the *Nash* case, we sustained in *Miller* v. *Oregon, per curiam,* 273 U. S. 657, a conviction of manslaughter under a statute of Oregon, which made the following rule of conduct a standard of criminality:

" Every person operating a motor vehicle on the public highways of this state shall drive the same in a careful and prudent manner, not to exceed thirty miles per hour, and within the limit of incorporated cities and towns not to exceed twenty miles per hour, and at intersections and schoolhouses not to exceed twelve miles per hour, and in no case at a rate of speed that will endanger the property of another, or the life or limb of any person." (Ch. 371, General Laws of Oregon, 1921, § 2, sub-division 16.)

The indictment was framed under the last clause of this statute. Such standard for the driver of an automobile on a highway is one to which it is neither harsh nor arbitrary to hold those criminally who operate such a possibly dangerous instrument of locomotion, and who are or ought to be aware of what degree of care is necessary to avoid injury to others under the conditions that prevail on a highway. See *Hess* v. *Pawloski, ante,* p. 352.

But it will not do to hold an average man to the peril of an indictment for the unwise exercise of his economic or business knowledge involving so many factors of varying effect that neither the person to decide in advance nor the jury to try him after the fact can safely and certainly judge the result. When to a decision whether a certain amount of profit in a complicated business is reasonable is added that of determining whether detailed restriction of particular anti-trust legislation will prevent a reasonable profit in the case of a given commodity, we have an utterly impracticable standard for a jury's decision. A legislature must fix the standard more simply and more definitely before a person must conform or a jury can act.

We conclude that the Anti-Trust statute of Colorado is void in that those who are prosecuted and convicted under it will be denied due process of law.

The decree of the District Court to enjoin proceedings which the defendant threatens to bring under the Act against the plaintiffs should be affirmed, but the decree below is modified and reversed so far as it purports to enjoin the defendant from proceeding further in prosecuting the information under that Act against the plaintiffs now pending in the state criminal court.

*The decree is in part reversed and in part affirmed.*