## UTILITY INVESTING CORPORATION v. STUART et al.

### No. 7809.

District Court, E. D. Pennsylvania.
Jan. 15, 1934.

Lucien B. Carpenter and Walter Biddle Saul, both of Philadelphia, Pa., and C. Edward Paxson, of New York City, for plaintiff.

William H. Neely, Sp. Deputy Atty. Gen., and William A. Schnader, Atty. Gen., for defendants.

KIRKPATRICK, District Judge.

The defendants are the members of the Pennsylvania Securities Commission and their counsel, and the principal prayer of the bill is for an injunction restraining

them from instituting criminal prosecutions under the Securities Act of the state (70 PS Pa. § 1 et seq.) against the plaintiff and its agents. The plaintiff, acting for Associated Gas & Electric Company, is offering to debenture holders of that company certain new or different securities in exchange for their debentures. It is conceded that the plaintiff is not registered as a dealer under the act, but it is contended that registration is not required because the proposed exchanges are in the course of a bona fide corporate reorganization.

Federal jurisdiction of the cause depends upon diversity of citizenship, and is conceded.

■■■■ Equity jurisdiction to enjoin criminal prosecutions depends upon whether "the prevention of such prosecutions is essential to the safeguarding of the rights of property." This terse statement of the exception to the general rule (from the opinion of the Supreme Court in Truax v. Raich, 239 U. S. 33, 36 S. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283) implies that there must be a threatened and irremediable injury to property rights. The inadequacy of the remedy at law is discussed fully in Ex parte Young, 209 U. S. 123, at pages 163, 165, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764. Where, as in this case, a right can only be exercised by repeated or continuing acts on the part of the plaintiff, its agents or officers, the defense of criminal prosecutions in the courts in which they are brought, pending the outcome of which a multitude of other prosecutions may be brought, offers no real protection. The circumstances must be exceptional, but where the conditions exist the jurisdiction has been frequently upheld, as reference to Cline v. Frink Dairy Company, 274 U. S. 445, 450, 47 S. Ct. 681, 71 L. Ed. 1146, and the numerous decisions there cited will show.

Granted the exception to the rule, I have no doubt that this case falls well within it. Interference with an attempt to make a voluntary adjustment of the affairs of a corporation which is in the condition in which this one finds itself may and probably will leave it no alternative but receivership. It almost goes without saying that such outcome, resulting, as it frequently does, in heavy expense, delay, and destruction of values is an irreparable injury.

There is no decision which limits the right of injunction to cases in which the prosecutions are under an unconstitutional statute, provided the requisites of federal jurisdiction are otherwise present. On the contrary, in Philadelphia Company v. Stimson, 223 U. S. 605, 32 S. Ct. 340, 345, 56 L. Ed. 570, the right to enjoin prosecutions claimed to be, but actually not, authorized by a constitutional statute was expressly sustained. The court in that case said: "It is urged that the statute authorizing the Secretary of War to prevent encroachments upon navigable streams is a valid one, and that the decisions cited do not apply. The validity of the statute is not attacked, because of the assumption that it is not to be construed to contemplate or authorize the alleged deprivation of property. Where the officer is proceeding under an unconstitutional act, its invalidity suffices to show that he is without authority, and it is this absence of lawful power and his abuse of authority in imposing or enforcing, in the name of the state, unwarrantable exactions or restrictions, to the irreparable loss of the complainant, which is the basis of the decree. Ex parte Young, 209 U. S. [123], page 159, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764. And a similar injury may be inflicted, and there may exist ground for equitable relief, when an officer, insisting that he has the warrant of the statute, is transcending its bounds, and thus unlawfully assuming to exercise the power of government against the individual owner, is guilty of an invasion of private property."

The numerous cases relied on by the defendants, which seem to make the unconstitutionality of the statute a condition, merely do so because in those cases the constitutional question happened to be the only basis of federal jurisdiction. It has nothing whatever to do with the equitable power involved.

■■■ This brings us to the principal question involved, namely, whether the state officers against whom this injunction is sought are in fact acting beyond the authority conferred upon them by the Pennsylvania Securities Act. They are proposing to prosecute the plaintiff or its agents as unregistered dealers. The act § 2 (c) (11), 70 PS Pa. § 2 (c) (11), however, provides that "the issue of securities to the security holders or other creditors of a corporation, in the process of a bona fide reorgani-

zation of such corporation, made in good faith \* \* \* in exchange for the securities \* \* \* of such creditors" shall not constitute the person or company engaged therein a "dealer" within its meaning. The offer of securities in this case is to security holders or creditors of the corporation and not to the public generally. If it is being made in the process of a bona fide reorganization of such corporation, the plaintiff need not register with the commission, and the defendants are exceeding their authority.

Without going in detail into the enormously complicated capital and debt structure of the Associated Gas & Electric Company, it may be said generally that what the company is proposing to do is to relieve itself of the burden of having to meet fixed interest charges at definite periods, by inviting the holders of fixed interest debentures (the senior obligation of the company) to exchange them for new obligations at a higher rate of interest, cumulative, but payable only as earned and coupled with a sinking fund provision. This is the ultimate purpose, but the plan becomes effective by degrees as various amounts of the old debentures are turned in, and does not go into full operation until all are so exchanged. Beside the "sinking fund income debentures," above described, the present holders are offered two other options, acceptance of either of which will count toward the completion of the plan. They involve exchange into (1) 50 per cent. of the face amount in senior fixed interest debentures of the Associated Gas & Electric Corporation which is the underlying company and direct owner of the physical assets, or (2) 100 per cent. of the income debentures of the Associated Gas & Electric Corporation at a somewhat lower rate of interest. The exercise of either of these options will naturally lighten (though it will not remove) the fixed interest burden upon the equities of the holding company.

I entertain no doubt that this rearrangement of its capital structure is a reorganization of the company within the meaning of the act. While corporate reorganizations are frequently, in fact usually, effected through the medium of receivership and judicial sale, the ordinary meaning of the word is quite broad enough to include voluntary capital readjustments. Nor is it necessary that there be a new corporation or change of management or ownership of physical assets. Nor need the equities be affected (though in this case they are). That the act contemplates, among others, reorganizations entirely confined to the credit structure appears from the fact that the provision in question may be read as applicable to "issue of securities to the \* \* \* creditors \* \* \* in exchange for the \* \* \* claims of such creditors." 70 PS Pa. § 2 (c) (11).

The underlying purpose of this and similar statutes is to protect the investing public. The method by which the Pennsylvania act does it is the licensing of dealers. Exceptions from the operation of the law are created by excluding from the class of dealers persons engaged in certain specified transactions, one of which is the offer of securities in the course of corporate reorganizations. The only condition is that the reorganization be bona fide and the offer of securities made in good faith. The determination of these questions involves the power of the commission itself, and, consequently, is not for the commission, but is for the court when the power is challenged.

In this case I have examined the plan and, without passing upon its merits or prospect of success, I am satisfied that the proposed reorganization is bona fide and that the securities are being offered in good faith.

The statements of law and fact contained in the foregoing opinion may be taken as specific findings and conclusions. In addition thereto I affirm all the requests for findings of fact and conclusions of law presented by the plaintiff. I also affirm all the defendants' requests for findings of fact with the qualification that, while the stockholders and holders of convertible obligations do not make any readjustment in their securities under the proposed plan, the position of the equities is nevertheless affected by it. The defendants' requests for conclusions of law are all denied.

A decree may be submitted.