## STUART et al. v. UTILITY INVESTING CORPORATION.

### No. 5449.

Circuit Court of Appeals, Third Circuit.

April 3, 1935.

THOMPSON, Circuit Judge, dissenting.

William A. Schnader, Atty. Gen., and William H. Neely, Sp. Deputy Atty. Gen., for appellants.

Walter Biddle Saul, and William E. Mikell, Jr., and Saul, Ewing, Remick & Saul, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the plaintiff, a corporation of Delaware, filed a bill against the defendants, citizens of Pennsylvania, who constituted the Securities Commission of that state. The bill prayed an injunction to prevent the defendants from bringing criminal prosecutions against the plaintiff, its officers and agents, for not taking out broker's licenses while carrying into effect a certain financial readjustment of the Associated Gas & Electric Company, its affiliate. With a view to determining whether the plaintiff was bound to take out such broker's licenses and register the same, and with the consent of all parties, the course was followed of plaintiff filing the present bill. On final hearing the court below held with the plaintiff and enjoined the defendant from entering criminal prosecution, whereupon the members of the Securities Commission took this appeal.

In the final analysis the case narrows to the question of whether the plaintiff's plan falls under the exceptions provided by the Pennsylvania Securities Act of April 13, 1927, P. L. 273 § 2(c), 70 PS Pa. § 2(c) which act provides:

"None of the following transactions shall constitute the person or company engaging therein a 'dealer' within the meaning of this act, that is to say, a sale, offer for sale, solicitation, subscription, invitation, dealing in, or delivery. * * *

"(11) Stock dividends, etc.; reorganizations—The distribution by a corporation of capital stock, bonds, or other security, to its stockholders as stock dividend or other distribution out of earnings or sur-

plus, or the issue of securities to the security holders or other creditors of a corporation, in the process of a bona fide reorganization of such corporation, made in good faith, either in exchange for the securities of such security holders or claims of such creditors or the issue of increased capital stock of a corporation sold or distributed by it entirely among its own stockholders."

The court found as a fact that the proposed plan was one wholly between the Associated Gas & Electric Company and its security holders, that none of its exchange securities was to be offered to the public for sale, and the purpose of the plan was, as found by the court, "to relieve itself of the burden of having to meet fixed interest charges at definite periods, by inviting the holders of fixed interest debentures (the senior obligation of the company) to exchange them for new obligations at a higher rate of interest, cumulative, but payable only as earned and coupled with a sinking fund provision." (D. C.) 11 F. Supp. 391, 393. In its opinion and findings the court held the plan was a reorganization made in good faith and was excepted by the statute, and that the plaintiff was therefore not required to take out and register broker's licenses.

All the questions involved were discussed in the thorough opinion of the court. Finding ourselves in accord therewith, and feeling that an additional opinion by this court would simply be an effort to clothe in different language what has been already satisfactorily said in the judge's opinion, we limit ourselves to affirming the case thereon.

THOMPSON, Circuit Judge (dissenting).

I am constrained to dissent from the majority opinion. The appellee undertook to rearrange the capital structure of the Associated Gas & Electric Company by obtaining the consent of the holders of the debenture bonds of the company to an exchange for other bonds of the company carrying a lower rate of interest. The appellants, who are members and counsel of the Pennsylvania Securities Commission, threaten to prosecute the appellee if it should present the proposed plan in Pennsylvania without registering. The appellants purport to act by authority of section 22 of the Pennsylvania Securities Act of April 13, 1927, P. L. 273 (70 PS Pa. § 22)

which provides: "Any dealer, agent, salesman, principal, officer, or employee, who shall, within this State, sell, offer for sale or delivery, solicit subscriptions to or orders for, dispose of, invite offers for or inquiries about, or who shall deal in any manner in, any security or securities, without being registered as in this act provided, * * * shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine of not more than five thousand dollars ($5,000.00), or imprisonment for not more than two years, or both. Any dealer, officer, agent, salesman, principal, officer, or employee who shall commit, in whole or in part, any other act declared unlawful by this statute, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be sentenced to pay a fine of not more than one thousand dollars ($1,000.00), or imprisonment for not more than one year, or both."

The appellee contends that it is exempt from being required to register, because it is not a "dealer" as defined by section 2(c)(11) of the Securities Act (70 PS Pa. § 2(c)(11), the pertinent portions of which are set out in the majority opinion.

The District Court found that the plan proposed by the appellee was for the issuance of securities to the security holders of a corporation in the process of a bona fide reorganization of such corporation, made in good faith, in exchange for the securities of such security holders. I am willing to accept the fact findings of the District Court. I am also willing to accept the conclusion of the District Court that the appellee is within the exemption of the statute and is not a "dealer" as therein defined, and that the jurisdiction of a federal court is established since the bill alleges diversity of citizenship and the requisite jurisdictional amount.

So far I agree with the reasoning and conclusions of the majority. I cannot, however, agree that a federal court has jurisdiction to enjoin the appellants and direct that they be restrained from instituting proceedings under the penal clauses of the state act. In my opinion, the real issue is whether the bill alleges sufficient grounds for the granting of injunctive relief by a federal court. In Commonwealth of Pennsylvania v. Williams, 294 U. S. 176, 55 S. Ct. 380, 385, 79 L. Ed. 841, 96 A. L. R. 1166, opinion filed February 4, 1935, the Supreme Court said: "It is in the public interest that federal courts of equity should

exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy. * * * There are stronger reasons for adopting a like practice where the exercise of jurisdiction involves an unnecessary interference by injunction with the lawful action of state officers."

The unimpeded enforcement of the criminal laws of a state is of vital importance to the proper administration of its affairs. If a party, informed of a possible prosecution by state authorities, were permitted to obtain an injunction in a federal court on the ground that the state act is inapplicable, the federal court would preempt the combined functions of state judge and grand and petit juries. I cannot accede to such encroachment.

The cases relied upon by the appellee to establish the jurisdiction of the federal court (Cline v. Frink Dairy Co., 274 U. S. 445, 47 S. Ct. 681, 71 L. Ed. 1146; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 S. Ct. 340, 56 L. Ed. 570) contain at least one element which is absent in the instant case; that is, a bona fide attack upon the constitutionality of the act under which the state officers may claim to derive their purported authority. For that reason, I do not consider the above-cited cases determinative. Aside from the lack of direct authority permitting the granting of an injunction in cases such as the instant one, it seems to me that the majority opinion is establishing a dangerous precedent by approving of the granting of injunctions restraining criminal prosecutions in state courts merely because there is a difference of opinion as to the interpretation to be placed upon the phraseology of a state act.

I think it more advisable to assume that a federal court of equity will not interfere to prevent the enforcement of a state criminal statute unless clear grounds exist for making an exception.

In Long v. Metzger, 301 Pa. 449, 152 A. 572, 573, certiorari denied 283 U. S. 822, 51 S. Ct. 346, 75 L. Ed. 1437, the Supreme Court of Pennsylvania said: "Another defect in the proceeding which renders it unmaintainable is that there is no great fundamental question of constitutionality or legal right involved which would form the basis for equitable jurisdiction to restrain criminal proceedings. It is more necessary to-day than it has been in the past that equity shall not interfere with the administration of the criminal laws, and it is only in those cases where some great fundamental constitutional question is involved or some unquestioned legal right is invaded that equity will raise its injunctive arm to halt a criminal proceeding. * * * 'It is only where the statute or ordinance is unconstitutional or otherwise invalid and where in the attempt to enforce it there is a direct invasion of property rights resulting in irreparable injury that an injunction will issue to restrain the enforcement thereof. Both of these elements are indispensable, and the latter element is not present where it appears that the injury or loss to plaintiff's business or rights of property would be only such as would incidentally flow from the arrest and prosecution thereunder. Courts will not interfere by injunction where the injury inflicted or threatened is merely the vexation of arrest and punishment of complainant, who is left free to litigate the questions of unconstitutionality of the statute or ordinance or its construction or application in making his defense at the trial or prosecution for its violation.' 32 C. J., p. 279, § 443 et seq."

In Boynton v. Fox West Coast Theatres Corporation (C. C. A.) 60 F.(2d) 851, the Tenth Circuit reversed a decree enjoining state officers from prosecutions for violation of a state act. It was held that the court below lacked equitable jurisdiction to grant the injunction since the attack on the constitutionality of the state act was not substantial and there was no danger of irreparable loss. It was unsuccessfully argued that, unless injunctive relief were granted, the complainant would be forced to submit to the requirements of the statute or be subjected to repeated criminal prosecutions.

In Fenner v. Boykin, 271 U. S. 240, 46 S. Ct. 492, 493, 70 L. Ed. 927, the Supreme Court said: "An intolerable condition would arise, if, whenever about to be charged with violating a state law, one were permitted freely to contest its validity by an original proceeding in some federal court."

In the absence of decisive authority justifying the decree in the instant case, I am of the opinion that the decree of the District Court should be reversed.