[L. A. No. 6385. In Bank.—June 30, 1921.]

A. H. CONGER et al., Appellants, v. ITALIAN VINE-YARD COMPANY (a Corporation), Respondent.

[1] Contract—Sale of Grapes—Manufacture of Wines—Passage of War Revenue Act — Insufficient Excuse for Nonperformance—Construction of Clause.—A corporation engaged in the manufacture and shipment of wines is not justified in refusing to proceed with the purchase of grapes under a clause in the contract of sale providing that in case of any prohibition or other legislative acts enacted either in the United States, the state of California, or San Bernardino County, which in any way will interfere with the manufacture or shipments of the products of the corporation, the contract will then become null and void, because of the increased tax on brandy used in the fortification of sweet wines imposed by the "War Revenue Act" of October 22, 1914, since such clause had reference to legislation placing a ban of some kind upon the manufacture, sale, or distribution of beverages of alcoholic content, and not to legislation of a revenue nature.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Reversed.

The facts are stated in the opinion of the court.

Kennicott & Williams for Appellants.

O'Melveny, Millikin & Tuller for Respondent.

LENNON, J.—On or about the fourth day of May, 1914, plaintiffs and defendant entered into a written agreement, which is the subject of this suit. By the terms of this contract, plaintiffs agreed to sell and deliver to defendant, a corporation engaged in the manufacture and shipment of wines, and defendant agreed to buy at a specified price, the entire crop of grapes to be grown on a certain vineyard in Riverside County, California, during the years 1914, 1915, and 1916. The crop of grapes grown in 1914 was delivered and paid for in accordance with the terms of the contract. On June 28, 1915, however, defendant wrote plaintiffs that the "War Revenue Act" of October 22, 1914, (38 Stat. 745), had so increased the tax on brandy used in the fortification of sweet wines as to make it necessary for defendant to cancel the contract for the purchase of the grapes. To this attempted termination of the contract plaintiffs interposed objection, claiming that the reason assigned by defendant was an insufficient ground for cancellation. The crop of 1915 was actually delivered by plaintiffs and accepted by defendant, but at a price less than that called for in said agreement. This was done under a special agreement, designed to save both parties from unnecessary loss, and upon the express stipulation that neither party receded from its position as to the force and effect of the contract of May, 1914. Defendant refused to accept delivery of the crop of 1916, whereupon plaintiffs sold the said crop for the highest obtainable price at the nearest available market, and brought this action for damages resulting from the sales of the crops of 1915 and 1916 at prices less than the contract price and for special damages growing out of the necessity of delivering the 1916 crop at a market more distant than the place of delivery agreed upon in said contract. Plaintiffs appeal from the judgment of the trial court, which was in favor of defendant.

The following clause in the contract is the source of the main controversy in the case: "It is further understood and agreed between the parties of the first part, and the party of the second part, that in case of any prohibition

or other legislative acts, enacted either in the United States, the state of California, or San Bernardino County which in any way will interfere with the manufacture or shipments of the products of the party of the second part, that this contract will then become null and void.'' The legislation by which defendant claims the contract in question was terminated, under the clause of the contract above set forth, increased the tax upon brandy used in fortifying sweet wines from three to fifty-five cents per gallon. ''Fortification,'' it was testified, is a process commonly employed in the manufacture of sweet wines and consists in the addition of brandy for the purpose of conserving the natural sweetness of the grapes by arresting fermentation and thus checking the transformation of the natural sugar contained in the grapes into alcohol and preventing the wine from becoming a ''dry'' wine. There was uncontradicted testimony that by this legislation, raising the tax upon the brandy used in fortifying sweet wines from three to fifty-five cents per gallon, defendant's cost of manufacturing sweet wines, with grapes at the contract price, was increased from $.22685 to $.35875 per gallon, i. e., over thirteen cents.

Plaintiffs contend that the clause of the contract above quoted refers only to legislation of a prohibitory nature, aimed *directly* at forbidding, checking, or impairing, in whole or in part, the manufacture or shipments of wines and other beverages of alcoholic content, and does not permit a reliance upon a *revenue act* in justification of a refusal to proceed under the contract. It is thus evident that the point of divergence in the case is the meaning of the words ''any prohibition or other legislative acts . . . which in any way will interfere with the manufacture or shipments of the products of the party of the second part.'' In aid of interpretation plaintiffs invoke the rule that, in the construction of statutes, wills, and other instruments, ''general words following an enumeration of specific things are usually restricted to things of the same kind (*ejusdem generis*) as those specifically enumerated.'' (Bouvier's Law Dictionary.) It is therefore urged that, notwithstanding the general language, the clause in question provides for a termination of the contract only in the event of the enactment of legislation of a prohibitive character. Defendant's answer to this contention is that the rule invoked is not an

inflexible rule of interpretation, but merely an aid to interpretation when the meaning is not otherwise clear. (*Emery & Co.* v. *American Ins. Co.*, 177 Iowa, 4, 17, [158 N. W. 748].)   Defendant claims that the rule is inapplicable to the present case for the reason that the phrase "other legislative acts which in any way will interfere" renders it apparent that a larger object was in the minds of the parties than indicated by the preceding specific term "prohibition."   The very generality of this phrase, however, is the most potent reason for the application of the rule relied upon by the plaintiffs.

Considered in its broadest aspect, the term "interfere" bears the significance of "disarrange," "disturb," "hinder." It will also be observed that, by reason of the use of the future tense, the parties were not obliged to await the actual results of the legislation before terminating the contract, for the contract ceases upon the enactment of legislation which "will" interfere.   Consequently, unless the general phrase is limited in character by the preceding specific term "prohibition," the contract becomes inoperative upon the enactment of any law which can reasonably be said to be of such a nature that it is likely in the future to disturb *in any way* the manufacture or shipments of defendant's products.   To carry this interpretation to its logical conclusion—any federal, state, or local legislation affecting freight rates, hours or compensation of labor, regulation as to sanitation or lowering of importation or tariff rates might be interposed as an interference with the business in question quite as much as this increase in revenue taxation. If the parties contemplated such a general and far-reaching operation of the clause under consideration, it was incumbent upon them to clearly express that intention.   Such unusual elasticity cannot be assumed from the vague expression used; it must be clearly provided for.   The only reasonable assumption is that the parties had in mind legislation placing a ban of some kind upon the manufacture, sale, or distribution of the products of defendant. In this connection it was natural for them to employ terms of more general import than the single word "prohibition," for, at the time the contract was entered into, manifold measures were under consideration having for their purpose the prevention of the manufacture or sale of beverages of

alcoholic content. It would have been difficult for the parties to designate the multiplicity of methods thus proposed by a single concrete term and, as a natural consequence, they sought to cover these varied prohibition measures by a general phrase.

It may be that, were the tax imposed so high as to naturally result in the discontinuance of defendant's business, it would be within the field of prohibitory legislation contracted against. However, that was not the nature of the particular act here under consideration. From all that appears, it was purely a revenue measure and the evidence discloses that defendant produced a greater quantity of sweet wine after the passage of this act than before. [1] Defendant's refusal to proceed with the purchase of the grapes is not, therefore, justified by the clause of the contract above set forth.

Defendant also relies upon an alleged breach of warranty by the plaintiffs as a defense. Section 1765 of the Civil Code provides that "One who sells or agrees to sell personal property, as his own, thereby warrants that he has a good and unencumbered title thereto." Cynthia Conger, the mother of plaintiff A. H. Conger, was the owner of the vineyard upon which the grapes were grown and it is, therefore, claimed that there was a breach of warranty of title. There is no merit in this contention; it was not assigned as one of the reasons for declining to proceed with the contract in defendant's notice to plaintiffs in 1915. The evidence shows that it was the custom of plaintiff A. H. Conger to transact all of his mother's business as though it were his own. It was found by the court, upon sufficient evidence, that "the proceeds of the crops of 1914, 1915, and 1916, so far as received by the plaintiff A. H. Conger, were paid over by him to said Cynthia L. Conger and were accepted by her with the knowledge that the said crops had been delivered to the defendant and to Garrett & Co. [purchaser of the 1916 crop] by the plaintiff Herbert Hill and that said Herbert Hill had received two-third of the proceeds thereof." It was further found that Cynthia L. Conger has never claimed any title to any of said grapes as against the persons to whom they were delivered. It, therefore, affirmatively appears that the contract was ratified by

the owner of the grapes and that the title promised defendant was not lacking.

The judgment is reversed.

Shaw, J., Wilbur, J., Sloane, J., Olney, J., and Lawlor, J., concurred.

Rehearing denied.

Shaw, J., Lawlor, J., Lennon, J., Sloane, J., and Shurtleff, J., concurred.