[Civ. No. 4380. Fourth Dist. Apr. 28, 1953.]

C. J. HAGGERTY, Individually and on Behalf of California State Federation of Labor, Appellant, v. COUNTY OF KINGS et al., Respondents.

Todd & Todd, Clarence E. Todd and Henry C. Todd for Appellant.

Francis Heisler, as Amicus Curiae on behalf of Appellant.

Walter M. Gleason, A. Hugo Pearson, District Attorney, and Kenneth C. Nagel, Assistant District Attorney, for Respondents.

MUSSELL, J.—Plaintiff appeals from a judgment entered against him after a demurrer to his complaint was sustained without leave to amend. The action was brought by one C. J. Haggerty individually and in a representative capacity

for and on behalf of the California State Federation of Labor, an unincorporated association, its officers and members to obtain an injunction against certain officers of Kings County, restraining said officers from interfering with peaceful picketing and the enforcement of ordinances numbers 155 and 199 of the county of Kings and from prosecuting two individuals in the justice court for alleged violations of said ordinances.

It is alleged in the complaint, in substance, that the California State Federation of Labor (hereinafter called the "Federation") is a voluntary association of labor unions affiliated with the American Federation of Labor and that the National Farm Labor Union is also affiliated with said Federation; that plaintiff C. J. Haggerty is the secretary of said Federation and a member of one of the labor unions affiliated with the said Federation; that the members of said Federation and the National Farm Labor Union, constitute a class similarly situated with respect to the matters alleged; that the subject matter of the complaint is a matter of interest to all of the members of said organization and that plaintiff has been authorized to represent all of the members of said unions and bring this suit in a representative capacity for and on behalf of himself and all other organizations similarly situated; that the said Federation and the said National Farm Labor Union and its members have found it necessary to picket employers in the farming areas in Kings County; that the ordinary method of picketing in such areas would entail great and unbearable expense to said unions and would not be effective; that the said unions have employed a method of picketing and publicizing labor disputes which involves the use of a number of automobiles proceeding in concert and involving also the use of loud speakers in order to attain the necessary publicity; that said method of picketing has been carried on without violence or threat of violence and without any more interference with traffic on or across the roads and highways than would be involved by other lawful and ordinary traffic; that in order to prevent peaceable assemblage and peaceable picketing and the exercise of freedom of speech by said unions and the members thereof, the defendants have threatened to institute and are instituting prosecution of such pickets and members under the provisions of the two said ordinances and in particular are prosecuting R. E. Wadley and Timothy Parker in the court of the justice of the peace for violations of said ordinances and that unless restrained, the said justice of the peace will convict said Wadley and Parker and subject them

to the penalties set out in said ordinances; that the said ordinances are unconstitutional and void; that R. E. Wadley and William Becker, members of the National Farm Labor Union applied for permission to use a loud speaker; that permission was denied and that the board of supervisors refused to hear evidence in connection with the application. The prayer of the complaint is that the defendants be restrained from interfering with the constitutional rights of the plaintiff, and the members of the unions whom he represents, to free speech as expressed by peaceful picketing; from attempting to enforce said ordinances and from presenting or continuing the prosecution of R. E. Wadley and Timothy Parker before the said justice of the peace. Damages are also asked for in the sum of $100,000.

The ordinances involved are attached to the complaint as exhibits and insofar as are here material, provide as follows:

"Ordinance No. 199

"ORDINANCE REQUIRING PERMITS FOR THE USE OF LOUD SPEAKERS ON VEHICLES UPON HIGHWAYS IN THE UNINCORPORATED AREAS OF KINGS COUNTY.

"Section 2. It shall be unlawful for any person, other than law enforcement and governmental agencies to employ a speaker mounted upon a vehicle for the purpose of giving instructions, directions, making talks, addresses or lectures to any persons or assemblage upon or over any highway, without first obtaining a permit therefor as hereinafter provided.

Section 3. The Board of Supervisors may grant any person a permit to employ a speaker mounted upon a vehicle upon or over any highway, upon proper application therefor, notwithstanding the provisions of Section 2. hereof. . . .

"Section 6. The Board of Supervisors shall grant said permit at said time, unless there is presented to the Board at the time of said consideration substantial and convincing evidence of a clear and present danger that the granting of said permit will result in the obstruction of the orderly movement of traffic or the peaceable passage or presence of persons, to, over or upon the public highways and other public places, or disorder or unlawful conduct, or unlawful injury of persons, or destruction of life or property, or tending to incite crime, or an invasion of the rights of privacy, or threatening the overthrow of the lawfully established government by force, in which case said permit may be denied.

"Section 9. Any person violating any of the provisions of this ordinance shall be guilty of a misdemeanor, and shall, upon conviction, be punished by a fine not exceeding Five Hundred Dollars ($500.00), or by imprisonment not exceeding six months or by both such fine and imprisonment."

"Ordinance No. 155

"An Ordinance Prohibiting Parades in Unincorporated Areas of the County of Kings Without a Permit, Providing for Application for and Issuance of Permits Therefor, and Providing Penalties for Violation of the Ordinance.

"Section 1. It shall be unlawful for any person to hold or conduct or to participate in any parade, procession or caravan upon any public highway in the County of Kings, State of California outside the limits of any incorporated city in said county, unless there has first been secured from the Sheriff of the County of Kings a written permit for the holding of such parade, procession or caravan.

"Section 2. To secure such written permit the person or organization sponsoring such parade, procession or caravan shall file a written application with the Sheriff of the County of Kings stating therein the name of the person or organization sponsoring the same, the route of travel of the same, the date and hour of holding the same, the approximate number of persons or vehicles expected to participate in the same, the purpose of holding the same, and such other information as shall be required by said Sheriff. Upon the filing of such application, if in his opinion the holding of such parade, procession or caravan will not unduly interfere with traffic upon the public highways and will not tend to cause a disturbance of the public peace, the Sheriff may in his discretion issue a written permit allowing the holding of such parade, procession or caravan. The Sheriff shall have power to refuse the issuance of such a permit if in his opinion the holding of such parade, procession or caravan would unduly interfere with traffic upon the public highways or would tend to cause a breach of the public peace. If the Sheriff grants such permit he may impose such restrictions and conditions as he deems necessary therein, said restrictions and conditions to be set out in full in said permit. No fee shall be charged by the Sheriff for the issuance of such permit.

"Section 4. Any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and

upon conviction thereof shall be punished by a fine of not more than five hundred dollars, or by imprisonment in the county jail for a term not exceeding six months, or by both such fine and imprisonment."

The principal question here involved is whether plaintiff, in his individual or representative capacity, has stated a cause of action in his complaint.

Plaintiff states in his opening brief that the instant action is brought by one C. J. Haggerty, representing all American Federation of Labor unions and members in California to restrain the enforcement of the said ordinances on the ground that they restrain the right of organized labor to assemble and picket and otherwise exercise the right of free speech. The complaint does not state facts showing an interference with plaintiff's individual or personal rights. It does not appear that he applied for or was denied a permit under either of the ordinances or that he was engaged in picketing. Since he has failed to plead facts showing any wrongful act which directly resulted in a violation of his legal rights, he has no standing to maintain this action in his individual capacity. (*United States* v. *Superior Court*, 19 Cal.2d 189, 198 [120 P.2d 26].)

Representative or "class" suits are authorized by the provisions of section 382 of the Code of Civil Procedure "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one may sue or defend for the benefit of all."

In *Parker* v. *Bowron*, 40 Cal.2d 344, 353 [254 P.2d 6], the court, in discussing this statutory provision, held that there must be a well-defined "community of interest" in the questions of law and fact involved as affecting the parties to be represented. (Citing *Weaver* v. *Pasadena Tournament of Roses Assn.*, 32 Cal.2d 833, 837 [198 P.2d 514] and *Jellen* v. *O'Brien*, 89 Cal.App. 505, 509 [264 P. 1115].) In the Parker case, as here, the plaintiff was the secretary of certain designated unions. He filed a petition for a writ of mandate for and in behalf of himself individually and as representative of affiliated unions and members thereof to compel the Los Angeles city officials to fix a salary or wages for the city employees in certain classifications. The court ruled that Parker failed to allege facts sufficient to bring him within the well established rule regarding class suits; that he did not claim to be a member of the interested class and

there was nothing to indicate that he was "similarly situated" with those whom he pretended to represent; and that there was no "common or general interest" in the subject matter of the controversy. In the Weaver case, *supra,* four plaintiffs "on behalf of themselves and all others similarly situated" brought an action to recover the statutory penalty imposed for the wrongful refusal of admission to a Rose Bowl game at Pasadena. The court held that the causes of action of the several plaintiffs and the other unnamed individuals were separate and distinct; that "the question as to each individual plaintiff is whether *he* "as a person over the age of 21 years" presented himself and demanded admittance to the game, whether *he* tendered the price of the ticket, and whether as to *him* the refusal of admission was wrongful under section 53 of the Civil Code; that while each claimant would be "similarly situated" in that his cause of action arose under the same statute, his recovery would rest on a distinct premise correlative with varying proof as to the facts of his particular case, and that in such circumstances there is not the necessary "common or general interest" in the subject matter of the litigation appropriate to the maintenance of a representative action; that in general, a representative suit is proper because it is in behalf of a common or joint interest of an ascertained class in the subject matter of the controversy."

*Douglas* v. *City of Jeannette,* 319 U.S. 157 [63 S.Ct. 877, 87 L.Ed. 1324], was an action brought to restrain threatened prosecution of petitioners and other Jehovah's Witnesses for violation of a city ordinance. It was there said that it was not enough to justify the exercise of equity jurisdiction, in the circumstances of that case; that there were numerous members of a class threatened with prosecution for violation of the ordinance; that "Generally, the jurisdiction of equity to avoid multiplicity of civil suits at law is restricted to those cases where there would otherwise be some necessity for the maintenance of numerous suits between the same parties involving the same issues of law or fact, and it does not ordinarily extend to cases where there are numerous parties and the issues between them and the adverse party— (here the state)—are not necessarily identical," and that "There is a similar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of

constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction.'' (Citing cases.)

In *Hague* v. *Committee for Industrial Organization*, 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423], individual citizens, unincorporated labor organizations composed of such citizens and a membership corporation brought suit in the United States District Court against the mayor, the director of public safety, and the chief of police of Jersey City, New Jersey, to enjoin interference with plaintiffs' rights of freedom of speech and assembly. The Supreme Court dismissed the bill as to all save the individual plaintiffs, holding that ''Natural persons, and they alone, are entitled to the privileges and immunities which Section 1 of the Fourteenth Amendment secures for 'Citizens of the United States.' Only the individual respondents may, therefore, maintain this suit.''

However, it was held in *Rosicrucian Fellowship* v. *Rosicrucian Etc. Church*, 39 Cal.2d 121, 139-140 [245 P.2d 481], that

''The rule is well established that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and the others; and a bill may also be maintained against a portion of a numerous body of defendants representing a common interest.'' (Citing *Baker* v. *Ducker*, 79 Cal. 365 [21 P. 764] and *Wheelock* v. *First Presb. Church*, 119 Cal. 477, 481 [51 P. 841].)

In *Peterson* v. *Donelley*, 33 Cal.App.2d 133 [91 P.2d 123], the action was brought by one beneficiary under a trust for and on behalf of all of the beneficiaries, approximately 3,000 in number, and the court held that the necessary parties were before the court; that the allegations of the complaint and the findings were sufficient to show that the parties were numerous and that it was impracticable to bring them all before the court.

In the present case it is alleged in the complaint that plaintiff is the secretary of the California State Federation of Labor and has been authorized to bring this action in a representative capacity; that the Federation and its members are engaged in peaceful picketing; that the defendants have threatened to institute and are instituting prosecution of such pickets and members under the provisions of the two ordi-

nances involved and that the members of the Federation constitute a class similarly situated with respect to the matters alleged. ■ These allegations must be accepted as true where, as here, the demurrer to the complaint was sustained without leave to amend. ■ Under these circumstances and in view of what was said in the recent Rosicrucian case, *supra*, we conclude that the action may be maintained by Haggerty in a representative capacity in behalf of the Federation and its members to test the constitutionality of the ordinances here under consideration. ■ In this connection it may be noted that the complaint fails to particularize how each of the members of the various unions was injured whereby he is entitled to damages and does not state the amount claimed by each as damages. The complaint therefore fails to state a cause of action for damages for tort. (*Jinks* v. *Hodge,* 11 Fed. Rules Dec. 346, 347.)

The record shows that R. E. Wadley and Timothy Parker are alleged to be members of the National Farm Union. This union is not a party plaintiff and Wadley and Parker, individually, are not parties plaintiff. They apparently are being prosecuted in a criminal action pending in the justice court. They can test the constitutionality of the involved ordinances in those proceedings. If they are unlawfully imprisoned, the remedies of habeas corpus or appeal are available to them. The complaint fails to state a cause of action in Haggerty as representing them individually.

Appellant takes the position that the two ordinances involved are unconstitutional and that the enforcement thereof will restrain the right of organized labor and the Farm Labor Union to assemble, to picket and otherwise exercise the right of free speech and assembly. ■ The right to picket peacefully and truthfully is one of organized labor's lawful means of advertising its grievances to the public, and as such, is guaranteed by the Constitution as an incident of free speech. (*Hughes* v. *Superior Court,* 32 Cal.2d 850, 854 [198 P.2d 885].) As is said in *In re Blaney,* 30 Cal.2d 643, 647 [184 P.2d 892] :

"The identification of the constitutional protection of the right of free speech, press and assembly, with the publicizing of labor disputes or problems through the medium of picketing, boycotting and otherwise, has been established."

■ However, such identification does not free the concerted activity of picketing from all restraint and injunctive relief is available where the object sought to be achieved and

the means used to achieve it are unlawful. (*Seven Up Etc. Co.* v. *Grocery Etc. Union*, 40 Cal.2d 368, 374 [254 P.2d 544].)

In the Hague case, *supra*, it was held that streets and parks are held in trust for the use of the public and are and have been used for the purpose of assembly, communicating thoughts between citizens and discussing public questions; that such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights and liberties of citizens; that the privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; that it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied.

██ While peaceful picketing may not be prohibited, unlawful conduct of pickets may be denounced by ordinance. (7 Cal.Jur. 10-Yr.Supp. (1945 Rev.), § 38, p. 479.) And it has been held that there may be a limit placed upon the number of pickets using sidewalks on the city streets and the means of use. (*Pezold* v. *Amalgamated Etc. Workmen*, 54 Cal.App.2d 120, 126-127 [128 P.2d 611].) ██ As to public highways within the county of Kings, outside the municipal corporations therein, the public acquires only the right of way and the incidents necessary to enjoy such right subject to regulation (Sts. & Hy. Code, § 905), but the supervisors have the custody and control of county highways (*Las Posas W. Co.* v. *County of Ventura*, 97 Cal.App. 296, 301 [275 P. 817]), and may enact and enforce ordinances and regulations for the maintenance, protection, supervision, management, control or use of such highways. (Sts. & Hy. Code, § 942.)

The constitutionality of ordinances regulating the use of loud speakers and parading on public streets has been presented to the Supreme Court of the United States on numerous occasions. In *Cox* v. *State of New Hampshire* (1941), 312 U.S. 569 [61 S.Ct. 762, 85 L.Ed. 1049, 133 A.L.R. 1396], five Jehovah's Witnesses and 63 others of the same persuasion were convicted for violation of a state statute prohibiting a "parade or procession" upon a public street without a special license. The statute provided for a licensing board to which was delegated the power to investigate and decide the question of granting licenses. The court upheld the conviction and said:

"The authority of a municipality to impose regulations in

order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding the good order upon which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection."

. . . . . . . . . . . . . .

"If a municipality has authority to control the use of its public streets for parades or processions, as it undoubtedly has, it cannot be denied authority to give consideration, without unfair discrimination, to time, place and manner in relation to the other proper uses of the streets. We find it impossible to say that the limited authority conferred by the licensing provisions of the statute in question as thus construed by the state court contravened any constitutional right."

In *Saia* v. *People of State of New York*, 334 U.S. 558 [68 S.Ct. 1148, 92 L.Ed. 1574], Saia was convicted of a violation of a municipal ordinance prohibiting the use of sound amplification devices except with permission of the chief of police. The ordinance provided that the use of loud speakers should not be deemed a violation of the ordinance, provided that the same was done with the permission of the chief of police. The court set aside the conviction and declared that the ordinance was unconstitutional on its face as it established a previous restraint on the right of free speech in violation of the First Amendment which is protected by the Fourteenth Amendment against state action. The court said:

"To use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted. The ordinance therefore has all the vices of the ones which we struck down in *Cantwell* v. *Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352; *Lovell* v. *Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; and *Hague* v. *Committee for Industrial Organization*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423."

The court went on to say that noise could be regulated by regulating decibels; that the hours and place of public discussion could be controlled and that any abuses which loud speakers create could be controlled by narrowly drawn statutes, but that when the city allows an official to ban them in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas.

In the Hague case, *supra,* the court declared the city ordinance unconstitutional which required a license from a local official for a public assembly on the streets or highways or in public parks or public buildings. The official was empowered to refuse the permit if in his opinion the refusal would prevent "riots, disturbances or disorderly assemblage." The court held that the ordinance was void on its face because it could be made "the instrument of arbitrary oppression of free expression of views on national affairs."

*Kovacs* v. *Cooper,* 336 U.S. 77 [69 S.Ct. 448, 93 L.Ed. 513, 10 A.L.R.2d 608], involved the validity of an ordinance which prohibited the use of a loud speaker or sound amplifier which emitted therefrom loud and raucous noises and was attached to and upon any vehicle operated or standing upon the streets or public places in the city of Trenton, New Jersey. Kovacs was convicted by a police judge of the city and on appeal to the Supreme Court, his conviction was affirmed. The court said:

"We think it is a permissible exercise of legislative discretion to bar sound trucks with broadcasts of public interest, amplified to a loud and raucous volume, from the public ways of municipalities. On the business streets of cities like Trenton, with its more than 125,000 people, such distractions would be dangerous to traffic at all hours useful for the dissemination of information, and in the residential thoroughfares the quiet and tranquility so desirable for city dwellers would likewise be at the mercy of advocates of particular religious, social or political persuasions. We cannot believe that rights of free speech compel a municipality to allow such mechanical voice amplification on any of its streets. . . .

"Opportunity to gain the public's ears by objectionably amplified sound on the streets is no more assured by the right of free speech than is the unlimited opportunity to address gatherings on the streets. The preferred position of freedom of speech in a society that cherishes liberty for all does not require legislators to be insensible to claims by citizens to com-

fort and convenience. To enforce freedom of speech in disregard of the rights of others would be harsh and arbitrary in itself. . . . We think that the need for reasonable protection in the homes or business houses from the distracting noises of vehicles equipped with such sound amplifying devices justifies the ordinance.''

In *Kunz* v. *People of the State of New York*, 340 U.S. 290 [71 S.Ct. 312, 328, 95 L.Ed. 267, 280], Kunz was convicted for unlawfully conducting a religious meeting without a permit from the city police commissioner. The ordinance under which he was convicted made it unlawful to hold public worship meetings on the streets without first obtaining a permit from the city police commissioner and gave the commissoner discretionary power to control in advance the right of citizens to speak on religious matters on the streets of New York. The court held that, as such, the ordinance was clearly invalid as a prior restraint on the exercise of first amendment rights and that there were no standards prescribed for the exercise of his discretion.

The Supreme Court of this state in *In re Porterfield*, 28 Cal. 2d 91 [168 P.2d 706, 167 A.L.R. 675], declared that an ordinance of the city of Redding which prohibited soliciting for compensation without a license or memberships in organizations requiring the payment of dues was unconstitutional and void. The ordinance designated the city council as a licensing board for the issuance of licenses and provided that the city council should issue a license, upon payment of a license fee, if the council was satisfied that the applicant was of good moral character and did not resort to force, violence, threat, menace, coercion, intimidation or corrupt means in his proposed work of solicitation. The court stated the rule applicable as follows:

'' 'A statute or ordinance which vests arbitrary discretion with respect to an ordinarily lawful business . . . in public officials, without prescribing a uniform rule of action, or, in other words, which authorizes the issuing or withholding of licenses . . . according as the designated officials arbitrarily choose, without reference to all of the class to which the statute or ordinance under consideration was intended to apply, and without being controlled or guided by any definite rule or specified conditions to which all similarly situated might knowingly conform,—is unconstitutional and void.' (See, also, 54 A.L.R. 1104; 92 A.L.R. 400.)''

The court stated that on the face of the ordinance the indefinite standards which it enunciated provided a mechanism for the deprival of constitutional rights, not only on the basis of guaranties applicable to free speech but also on the basis of those protecting the right to engage in lawful fashion in a lawful activity.

A provision of the Los Angeles Municipal Code which prohibited the holding of a procession or parade on any public street without a permit from the board of police commissioners, no standard being set up in the code by which the board was required to measure its decision, was held to be unconstitutional and void in *People* v. *Duffy,* 79 Cal.App.2d Supp. 875 [179 P.2d 876].

 Viewed in the light of the rules and principles announced in the foregoing cases, ordinance No. 155 here involved is, in our opinion, unconstitutional and void. To conduct or participate in any parade, procession or caravan on a public highway in the county of Kings, it is first necessary to secure a permit from the sheriff. There are no standards prescribed for the exercise of his discretion and if, in his opinion, such parade, procession or caravan would unduly interfere with traffic or would tend to cause a breach of the public peace, he may refuse to issue a permit. The ordinance vests arbitrary discretion in such officer and the determination of what constitutes a permissible parade or caravan is only limited by his opinion as to what would or would not constitute an undue interference with traffic or tend to cause a breach of the public peace. The Board of Supervisors of Kings County has authority to impose regulations in order to assure the safety and convenience of the public in the use of public highways and control the traffic thereon. However, such regulations should be set forth in an ordinance, properly drawn, and not left to the determination of an administrative officer.

 Ordinance No. 199, regulating the use of loud speakers, is not, in our opinion, unconstitutional and void as an unlawful restraint upon the right of free speech. It is the privilege of all persons to use the public highways and the right of free speech thereon cannot be abridged or denied. However, the use of such highways may be regulated and controlled in order to assure the safety and convenience of the traveling public. The Board of Supervisors of Kings County has authority to specify, without unfair discrimination, the time, place and manner of such use in rela-

tion to other proper uses of the highways. ▇▇ The use of vehicles equipped with loud speakers emitting loud and raucous noises and objectionably amplified sound on public highways is subject to legislative control. ▇▇ Ordinance No. 199 does not abridge or deny the right of free speech or assembly. By its terms a permit to use a loud speaker can only be denied upon presentation to the board of supervisors of substantial and convincing evidence of a clear and present danger that the granting of a permit will result in the obstruction of the orderly movement of traffic or the peaceable passage or presence of persons to, over or upon the public highways and other public places, or disorder or unlawful conduct, or unlawful injury of persons or destruction of life or property, or tending to incite crime, or an invasion of the rights of privacy or threatening the overthrow of the lawfully established government by force. The standards controlling the action of the board of supervisors are specifically set forth and enumerated. In this connection it may be observed that plaintiff alleges in his complaint that unions have employed a method of picketing and publicizing labor disputes involving the use of a number of automobiles proceeding in concert and using loud speakers to picket employers on large tracts of land in the rural districts of Kings County; that such picketing has been carried on without violence or threat of violence and without any more interference with traffic on or across the roads and highways on which said picketing is in progress than would be involved by other and lawful traffic. Picketing in the manner alleged is not prohibited by the terms of the ordinance. ▇▇ The use of sound amplifiers and loud speakers emitting a volume of sound sufficient to reach the homes of farmers on such large tracts of land may be regulated by county ordinance when such use creates an unwarranted obstruction to the orderly movement of traffic on the highways.

It follows from what we have here said that the demurrer to the second cause of action involving the constitutionality of ordinance No. 155 should not have been sustained without leave to amend. The judgment is reversed as to the second cause of action and affirmed as to the first. Appellant to recover costs on appeal.

Barnard, P. J., and Griffin, J., concurred.