[S. F. No. 18825. In Bank. Feb. 4, 1955.]

C. J. HAGGERTY, Respondent, v. ASSOCIATED FARMERS OF CALIFORNIA, INC. (a Corporation) et al., Defendants; COUNTY OF FRESNO et al., Appellants.

Robert M. Wash, County Counsel (Fresno), Maurice E. Smith and John E. Loomis, Assistant County Counsel, Dearing, Jertberg & Avery and Kenneth G. Avery for Appellants.

Todd & Todd, Clarence E. Todd and Henry C. Todd for Respondent.

Francis Heisler and Lawrence Speiser, as Amici Curiae on behalf of Respondent.

EDMONDS, J.—The county of Fresno and certain county officers have appealed from a judgment permanently enjoining them from ''enforcing or causing Ordinance No. 415 of the County of Fresno or any part or provision thereof to be enforced.'' The judgment is based upon the conclusion that the ordinance, upon its face, unconstitutionally abridges the right of free speech.

Known as the "Fresno County Anti-Noise Ordinance," it makes unlawful the emission or transmission of "any loud and raucous noise upon or from any public highway or public thoroughfare or from any aircraft of any kind whatsoever." A violation of the ordinance is punishable by a fine not to exceed $500 or detention in the county jail for a period not in excess of six months or both.

As defined by the ordinance, "loud and raucous noise" means:

"(1) Any noise made by the motor of any automobile, truck, tractor, motorcycle, or aircraft of any kind not reasonably required in the operation thereof under the circumstances and shall include but not be limited to backfiring, motor racing, and the buzzing by airplanes.

"(2) The sound of the discharge of any gun or other explosive except by or with the permission of the governing body having control of the highway or thoroughfare.

"(3) The human voice or any record or recording thereof when amplified by any device whether electrical or mechanical or otherwise to such an extent as to cause it to carry on to private property or to be heard by others using the public highways or public thoroughfares.

"(4) Any sound not included in the foregoing which is of such volume, intensity, or carrying power as to tend to interfere with the peace and quiet of persons upon private property or other users of the public highways and thoroughfares."

Shortly after its enactment, several persons were arrested upon charges of violating the ordinance. All of them were members or representatives of the California State Federation of Labor or its affiliate, the National Farm Labor Union, and when arrested they were "caravaning" along certain public highways or roads adjacent to farms. By means of automobile horns and loudspeakers mounted on their cars, they were attempting to attract the attention of farm workers and to induce them to quit work and engage in a strike to enforce union demands for wages.

C. J. Haggerty, the secretary of the California State Federation of Labor and a member of its affiliated union, sued to enjoin the enforcement of the ordinance. The action was brought on behalf of himself and the members of the two labor organizations, including those persons previously arrested for violating the ordinance.

The trial court found that, unless restrained, the law

enforcement officers of the county will continue to prosecute violators of the ordinance. This course of conduct, it found, would result in large numbers of lawsuits (presumably criminal prosecutions) and actions by members of the unions to enjoin their prosecution. According to another finding, the federation and the farm labor union have numerous members, and, although each of them has an interest in the subject matter of the action, it is impracticable to bring them all before the court. Also, Haggerty was authorized to prosecute this action, as their representative, to test the constitutionality of the ordinance.

Stated as findings of fact are the legal conclusions that "persons, including the class thereof represented by plaintiff, will be subject to arrest and prosecution under said Ordinance if they employ and use loud-speakers on the public highways for any purpose" and that the ordinance thus effectively prevents such use. "Insofar as it purports to prohibit the use of loud-speakers upon the public highways and thoroughfares of the County," it was concluded, the ordinance "is unconstitutional upon its face as an abridgment of the constitutional guarantee of the right of free speech." More specifically, the trial court held objectionable the provision defining "loud and raucous noise" as including "the human voice or any record or recording thereof when amplified by any device whether electrical or mechanical or otherwise to such an extent as to cause it to carry on to private property or to be heard by others using the public highways and thoroughfares," and concluded that this definition "is so inseparable from the other provisions of said Ordinance that the entire Ordinance must be found to be unconstitutional."

The county and the county officials have appealed from the judgment and from an order refusing to vacate the judgment. As grounds for reversal they contend that the ordinance is constitutional on its face. But even if it is unconstitutional, they argue, Haggerty has not shown a proper ground for equitable relief against its enforcement.

At the trial it was stipulated that the union members who were arrested were arraigned on a charge of violating Ordinance 415. The stipulation did not include the particular provisions of the ordinance applicable to the conduct for which the arrests were made. Attempts were made by Haggerty to show that the ordinance is unconstitutional in its particular application to the activities carried on at the time of the arrests. He sought to establish the existence of

a labor controversy and that the ordinance unlawfully circumscribes the rights of union members to engage in peaceful picketing in the furtherance of a legitimate labor objective. However, no finding was made concerning the nature and purpose of those activities. Instead, the judgment enjoining all prosecutions under the ordinance rests entirely upon these conclusions: (1) the restriction upon the use of amplification devices on the county highways establishes on the face of the ordinance an unconstitutional abridgment of free speech; and (2) the clause defining the scope of the prohibition against ''loud and raucous noises'' so as to include those devices is not severable from the other parts of the ordinance.

In *Saia* v. *New York*, 334 U.S. 558 [68 S.Ct. 1148, 92 L.Ed. 1574], an ordinance prohibited the use of ''any radio device, mechanical device, or loud speaker or any device of any kind whereby the sound therefrom is cast directly upon the streets and public places . . . where . . . maintained for advertising purposes or for the purpose of attracting the attention of the passing public, or which is so placed and operated that the sounds coming therefrom can be heard to the annoyance or inconvenience of travelers . . . or of persons in neighboring premises.'' Excepted from the statutory ban was '' [p]ublic dissemination, through radio loud-speakers, of items of news and matters of public concern and athletic activities . . . under permission obtained from the Chief of Police.''

Saia, one of Jehovah's Witnesses, set up a loud-speaker in a public park and began broadcasting religious programs without having obtained a permit from the chief of police. He was convicted in the state court of violating the ordinance. In the opinion of a majority of the justices, the provision requiring a permit ''is unconstitutional on its face, for it establishes a previous restraint on the right of free speech in violation of the First Amendment which is protected by the Fourteenth Amendment against State action. To use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted. The ordinance therefore has all the vices of the ones which we struck down in *Cantwell* v. *Connecticut*, 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352];

*Lovell* v. *Griffin*, 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949] ; and *Hague* v. *C.I.O.*, 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423].''

The court then reviewed the Cantwell, Lovell and Hague decisions, stating that the ordinances there involved amounted to ''previous restraint,'' ''censorship 'in its baldest form' '' and the '' 'arbitrary suppression of free expression.' '' It concluded that the challenged ordinance ''has the same defects. The right to be heard is placed in the uncontrolled discretion of the Chief of Police. He stands athwart the channels of communication as an obstruction which can be removed only after criminal trial and conviction and lengthy appeal. A more effective previous restraint is difficult to imagine. . . . Loud-speakers are today indispensable instruments of effective public speech. The sound truck has become an accepted method of political campaigning. It is the way people are reached. . . . The present ordinance would be a dangerous weapon if it were allowed to get a hold on our public life. Noise can be regulated by regulating decibels. The hours and place of public discussion can be controlled. But to allow the police to bar the use of loud-speakers because their use can be abused is like barring radio receivers because they too make a noise. The police need not be given the power to deny a man the use of his radio in order to protect a neighbor against sleepless nights. The same is true here.

''Any abuses which loud-speakers create can be controlled by narrowly drawn statutes. When a city allows an official to ban them in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas. In this case a permit is denied because some persons were said to have found the sound annoying. In the next one a permit may be denied because some people find the ideas annoying. Annoyance at ideas can be cloaked in annoyance at sound. The power of censorship inherent in this type of ordinance reveals its vice.'' (Pp. 560, 561, 562 [334 U.S.].)

Mr. Justice Frankfurter dissented with Justices Reed and Burton upon the ground that the limitations of the ordinance ''upon the exercise of appellant's rights of utterance did not . . . exceed the accommodation between the conflicting interests which the State was here entitled to make in view of time and place and circumstances.'' (P. 566 [334 U. S.].) Mr. Justice Jackson stated in dissent that no issue of free speech was involved. As he viewed the problem, it was one of regulation of the use of sound apparatus which, in his

opinion, the city had the right to bar completely from public property, or, if regulating its use, to entrust control of it to a chief of police.

*Kovacs* v. *Cooper*, 336 U.S. 77 [69 S.Ct. 448, 93 L.Ed. 513, 10 A.L.R.2d 608], concerned an ordinance under which one could not lawfully operate "for any purpose whatsoever, on or upon the public streets, alleys or thoroughfares" of the city "any device known as a sound truck, loud-speaker or sound amplifier, . . . or any instrument of any kind or character which emits therefrom loud and raucous noises and is attached to and upon any vehicle. . . ." Kovacs was arrested when he operated a sound truck on a public street. The judgment of conviction was affirmed.

A determination of the precise basis for the decision is made difficult by the number of opinions filed. Mr. Justice Reed, joined by Mr. Justice Burton and Chief Justice Vinson, distinguished the Saia case upon the ground that the ordinance there concerned allowed a previous restraint within the uncontrolled discretion of the chief of police. "This ordinance," they said, "is not of that character. It contains nothing comparable to the above-quoted . . . [section] of the ordinance in the Saia case. It is an exercise of the authority granted to the city by New Jersey 'to prevent disturbing noises,' . . . nuisances well within the municipality's power to control. The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community. A state or city may prohibit acts or things reasonably thought to bring evil or harm to its people." (Pp. 82-83 [336 U.S.].)

The opinion accepted the construction of the statute given by the New Jersey court as prohibiting vehicles with sound amplifiers emitting loud and raucous noises, and stated the decisive question as being "whether or not there is a real abridgment of the rights of free speech." It was said that "even the fundamental rights of the Bill of Rights are not absolute. The Saia case recognized that in this field by stating 'The hours and place of public discussion can be controlled.' " Sound trucks, the opinion continued, create a problem which differs from other means employed to communicate ideas. "The unwilling listener is not like the passer-by who may be offered a pamphlet in the street but cannot be made to take it. In his home or on the street he is practically helpless to escape this interference with

his privacy by loud speakers except through the protection of the municipality.

"City streets are recognized as a normal place for the exchange of ideas by speech or paper. But this does not mean the freedom is beyond all control. We think it is a permissible exercise of legislative discretion to bar sound trucks with broadcasts of public interest, amplified to a loud and raucous volume, from the public ways of municipalities. On the business streets of cities like Trenton, with its more than 125,000 people, such distractions would be dangerous to traffic at all hours useful for the dissemination of information, and in the residential thoroughfares the quiet and tranquility so desirable for city dwellers would likewise be at the mercy of advocates of particular religious, social or political persuasions. We cannot believe that rights of free speech compel a municipality to allow such mechanical voice amplification on any of its streets.

"The right of free speech is guaranteed every citizen that he may reach the minds of willing listeners . . . [but] [i]t is an extravagant extension of due process to say that because of it a city cannot forbid talking on the streets through a loud speaker in a loud and raucous tone. . . . Opportunity to gain the public's ears by objectionable sound on the streets is no more assured by the right of free speech than is the unlimited opportunity to address gatherings on the streets. . . . Section 4 of the ordinance bars sound trucks from broadcasting in a loud and raucous manner on the streets. There is no restriction upon the communication of ideas or discussion of issues by the human voice, by newspapers, by pamphlets, by dodgers. We think that the need for reasonable protection in the homes or business houses from the distracting noises of vehicles equipped with such sound amplifying devices justifies the ordinance." (336 U.S. 86-89.)

Mr. Justice Frankfurter and Mr. Justice Jackson concurred separately. Mr. Justice Rutledge stated his views in a dissenting opinion and Mr. Justice Black's conclusions in criticism of the decision were approved by Mr. Justice Douglas and Mr. Justice Rutledge. Mr. Justice Murphy dissented without opinion.

As the ordinance of Fresno County does not delegate to any person or agency a discretion in determining who may operate sound amplification devices, it is not subject to at-

tack for the reasons stated in the Saia case. (*Cf. Haggerty v. County of Kings*, 117 Cal.App.2d 470, 483 [256 P.2d 393].) It regulates the conduct of all persons seeking to use such devices, and the restrictions are uniformly applicable. The decisive question is whether the prohibition of the ordinance is a reasonable one.

According to the appellants, the Kovacs case stands for the proposition that a municipality constitutionally may enact an absolute prohibition against the use of sound trucks and similar devices,· although it cannot constitutionally limit their use subject to a permit, the issuance of which is not governed by adequate standards. They point to the opinions of Justices Black and Jackson which construed the decision as necessarily holding that an absolute prohibition against use of those devices is constitutional and repudiating the rationale of the Saia case. Mr. Justice Frankfurter took the same position in stating that ''So long as a legislature does not prescribe what ideas may be noisily expressed and what may not be, nor discriminate among those who would make inroads upon the public peace, it is not for us to supervise the limits the legislature may impose in safeguarding the steadily narrowing opportunities for serenity and reflection.'' (336 U.S. 97.) Mr. Justice Reed, on the other hand, stated: '' [a]bsolute prohibition within municipal limits of all sound amplification, even though reasonably regulated in place, time and volume, is undesirable and probably unconstitutional as an unreasonable interference with normal activities.'' (336 U.S. 81-82.)

These cases present no clear-cut determination by the United States Supreme Court as to whether in any situation an absolute prohibition against the use of sound trucks may be upheld. Commentators in the field of constitutional law are in disagreement as to their implications. (See comments, 22 So.Cal.L.Rev. 416; 34 Cornell L.Q. 626; 34 Iowa L.Rev. 681; 47 Mich.L.Rev. 1007; 14 Mo.L.Rev. 194; 62 Harv.L. Rev. 1228.) The court has cited the Kovacs case as a recognition of the power of the state to protect, within constitutional limitations, ''the well-being and tranquility of a community'' (*Breard v. Alexandria*, 341 U.S. 622, 640 [71 S.Ct. 920, 95 L.Ed. 1233]) and to prohibit ''the making of artificially amplified raucous sounds in public places.'' (*Public Utilities Com. v. Pollak*, 343 U.S. 451, 464 [72 S.Ct. 813, 96 L.Ed. 1068].) Since the Kovacs case, some state courts have upheld legislation absolutely prohibiting the use of sound trucks.

(*Brinkman* v. *City of Gainesville*, 83 Ga.App. 508 [64 S.E. 2d 344, 349] ; *State* v. *Headley*, (Fla.) 48 So.2d 80, 81.)

It is unnecessary to decide whether an absolute prohibition within the limits of a county or municipality may be upheld. The ordinance here under attack is not of that kind. Although the appellants have made sweeping concessions as to the extent to which the ordinance is prohibitory, this court is bound by the statutory definition of its scope. (*Rideaux* v. *Torgrimson,* 12 Cal.2d 633, 636 [86 P.2d 826].)

The provision defining proscribed noise does not include all use of "loud-speaking" devices, but only the amplification of the human voice "to such an extent as to cause it to carry on to private property or to be heard by others using the public highways or public thoroughfares." Other uses, such as broadcasting music or even the human voice when not amplified, are not excluded. Moreover, the prohibition extends only to a "public highway or public thoroughfare or from any aircraft." The use of such devices in other locations, such as private property, public parks, squares and meeting places, and similar places normally devoted to public assembly is not in any manner limited.

It is argued that the practical effect of the limitation upon the volume with which sound trucks may be operated is to exclude them from use upon the highways of the county. It may be conceded that geographical limitations are somewhat greater than those specified by the ordinance in the Kovacs case, but little if any difference appears in regard to the restrictions upon volume. There the court accepted the determination of "loud and raucous" made in the state court as sufficient to justify applying the ordinance to Kovacs. In a footnote to the opinion of Mr. Justice Reed are quotations from the opinions in the state court which, apparently, were relied upon as sufficient to justify that determination. It was observed : "The New Jersey courts may have concluded that the necessity of search by the patrolman to locate the sound truck on a street was sufficient evidence of loudness and raucousness" and again: "Perhaps the last-quoted paragraph assumes that all sound trucks emit loud and raucous noise." (P. 84, fn. 8.) The limitations imposed by the definitions included within the present ordinance are no more restrictive than those accepted by the Supreme Court.

The present ordinance is declared to be an emergency measure "necessary for the immediate preservation of the public well-being and safety." The statement of that neces-

sity is as follows: "The making, emitting, and transmitting of loud and raucous noises as herein defined upon or from public highways and public thoroughfares or from the air by aircraft seriously interferes with the peaceable enjoyment of private property, and the distraction thereof seriously interferes with the traveling public constituting a hazard to the safety of persons using said highways and thoroughfares."

■ The county, in the exercise of the police power of the state, has a legitimate interest in the preservation of the safety and tranquility of its citizens. It cannot be said that the present ordinance is not reasonably directed to that end.

■ Haggerty, however, contends that the ordinance also offends the requirements of due process in its other definitions of the activities properly to be included within the scope of its prohibitions. The contention that "loud and raucous" itself is so vague and indefinite as to establish no ascertainable standard of guilt was passed upon in the Kovacs case, where it was pointed out that "[w]hile these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." (336 U.S. 79.)

■ A similar contention is made with regard to the definition in clause one as including the noise of "the motor of any automobile, truck, tractor, motorcycle, or aircraft of any kind not reasonably required in the operation thereof under the circumstances. . . ." It is argued that "reasonably required" is too vague and indefinite a standard of guilt. Reliance is placed upon cases which have held to be too indefinite such phrases as "reasonable profits," "greater or less than real value," "current rate of per diem wages in the locality where the work is performed." (*Cline* v. *Frink Dairy Co.*, 274 U.S. 445 [47 S.Ct. 681, 71 L.Ed. 1146]; *International Harvester Co.* v. *Kentucky*, 234 U.S. 216, 221 [34 S.Ct. 853, 58 L.Ed. 1284]; *Connally* v. *General Construction Co.*, 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322].) These cases, however, involve loose definitions in fields where generally there may be great differences of opinion as to what conduct may be reasonable. A restriction upon the operation of motor vehicles so as to eliminate unreasonable noises operates in an area where a determination as to what is necessary and reasonable may be made more precisely and has a content of fairly fixed meaning to operators of such vehicles. More nearly in point are prohibitions against "unreasonable or unsafe speed" (held constitutional in *Ex parte Daniels*,

183 Cal. 636, 647 [192 P. 442, 21 A.L.R. 1172]); and the use of horns emitting "an unreasonably loud or harsh sound." (Veh. Code, § 671.)

 Clause four is attacked on the same ground of indefiniteness because of the use of the phrase "of such volume, intensity, or carrying power as to interfere with the peace and quiet" of other persons on private property or on the highway. Haggerty does not challenge the sufficiency of the terms, "peace and quiet," but concedes that if the entire ordinance were equated to that standard it would withstand constitutional challenge. His objection is to "interfere," and "tend to interfere" with such peace and quiet. There is no merit to this contention. Both "interfere" and "tend" have well recognized, defined meanings. (*Cf. Conger* v. *Italian Vineyard Co.*, 186 Cal. 404, 407 [199 P. 503] ["the term 'interfere' bears the significance of 'disarrange', 'disturb', 'hinder'."]; *State* v. *Hopkins*, 64 N.D. 301 [252 N.W. 48, 51] ["The word 'tend' means to be directed or have a tendency to any end, object or purpose."]; *Smulson* v. *Board of Dental Examiners*, 47 Cal.App.2d 584, 587 [118 P.2d 483] [upholding a statute prohibiting advertising statements which are of a character "tending to deceive or mislead the public."].)

Other contentions made by Haggerty, if accepted, would not require the court to hold that the ordinance, upon its face, is unconstitutional. Insofar as they tend to establish the invalidity of the ordinance in its application to him, they may be considered upon a retrial in connection with that question. No other points relied upon require discussion.

The judgment is reversed.

Shenk, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

The sound trucks involved in the present controversy were being used on the highways and on roads adjacent to farms for the purpose of attracting the attention of farm workers as a means of inducing them to quit work and engage in a strike to enforce union demands for higher wages.

According to the majority opinion the question presented for determination is whether the prohibition of the ordinance under consideration is a reasonable one.

The ordinance (No. 415, clause (3) of subdivision (d) of section 2.) with which we are here concerned defines "loud

and raucous noise'' as ''The human voice or any record or recording thereof when amplified by any device whether electrical or mechanical or otherwise to such an extent as to cause it to carry on to private property or to be heard by others using the public highways or public thoroughfares.'' The majority construes this to mean that no absolute prohibition was intended by the ordinance and finds it ''unnecessary to decide whether an absolute prohibition within the limits of a county or municipality may be upheld.'' It is concluded that the county, in the exercise of the police power of the state, has a legitimate interest in the preservation of the safety and tranquillity of its citizens and that the ordinance is reasonably directed to that end.

The majority reasons that the ordinance does not constitute an ''absolute prohibition'' because *all* use of ''loud-speaking'' devices are not banned ''but *only* the amplification of the *human voice* 'to such an extent as to cause it to carry on to private property or to be heard by others using the public highways or public thoroughfares.' Other uses, such as broadcasting music or even the human voice when not amplified, are not excluded. Moreover, the prohibition extends only to a 'public highway or public thoroughfare or from any aircraft.' The use of such devices in other locations, such as private property, public parks, squares and meeting places, and similar places normally devoted to public assembly is not in any manner limited.'' (Emphasis added.)

The unmistakable import of this statement is that the ordinance absolutely prohibits only the amplification of the human voice on the highways and thoroughfares. A prohibition against amplification of the human voice so as ''to be heard by others'' in such places silences it completely and constitutes a violation of the express mandate of the First and Fourteenth Amendments to the Constitution of the United States—that freedom of speech shall not be abridged. In singling out the amplification of the human voice as the ''only'' thing prohibited by the clause of the ordinance in question the majority clearly discriminates against human speech and the free dissemination of ideas thereby because without amplification so that it can be heard by others, freedom to use the human voice on the highways and thoroughfares is a freedom without value.

It should be remembered, however, that we are not concerned with something which might be done on ''private property, public parks, squares and meeting places'' but that

which may, or may not be done, on public highways and thoroughfares. The right of free speech guaranteed by the Constitution includes not only the right to be free from restraints on speech in the privacy of one's own home, but the right, subject to reasonable regulation, to speak in other places where people may be reached. As the Supreme Court of the United States said in *Saia* v. *New York*, 334 U.S. 558 [68 S.Ct. 1148, 92 L.Ed. 1574], "Loud-speakers are today indispensable instruments of effective public speech. The sound truck has become an accepted method of political campaigning. It is the way people are reached. . . ." What may be permitted in some other place has no bearing whatsoever on the public highways and thoroughfares; what may be permitted in the way of the normal human voice or music on highways is immaterial when one considers that the human voice is effectively silenced when not amplified through a loud-speaker when ideas are sought to be disseminated from the public highway. One may cry aloud his ideas in the wilderness, but that is surely not an effective way to share those ideas with the segment of the public one wishes to reach. To prohibit the use of sound trucks on public highways and thoroughfares is to prohibit the dissemination of ideas to a segment of the population which probably could be reached in no other way. Sound trucks on public highways are the way many "people are reached." A writer in 34 Cornell Law Quarterly 626 points out with considerable merit that it is unrealistic to argue that what is meant by freedom of speech is the native power of human speech. The fact that earlier holdings of the court only went so far as to uphold the right of unamplified speech does not imply that ". . . one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place." (*Schneider* v. *Irvington*, 308 U.S. 147, 163 [60 S.Ct. 146, 84 L.Ed. 155].) Similarly, it is unsound to argue that one may not be permitted to use a loud-speaker because free speech could be exercised in some other manner—that is, without an amplifying device. The broad language of the various opinions makes it plain that constitutional free speech is not limited to ancient forms of expression.

In *Saia* v. *New York, supra* (334 U.S. 558, 559, 560, 561) where a permit was required for the use of a sound truck, Mr. Justice Douglas speaking for a majority of the court, said that the ordinance in question ". . . establishes a pre-

vious restraint on the right of free speech in violation of the First Amendment which is protected by the Fourteenth Amendment against State action. To use a loud-speaker or amplifier one has to get a permit from the Chief of Police. There are no standards prescribed for the exercise of his discretion. The statute is not narrowly drawn to regulate the hours or places of use of loud-speakers, or the volume of sound (the decibels) to which they must be adjusted. The ordinance therefore has all the vices of the ones which we struck down in *Cantwell* v. *Connecticut*, 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352]; *Lovell* v. *Griffin,* 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949]; and *Hague* v. *C.I.O.,* 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423].'' The court also said: ''Loud-speakers are today indispensable instruments of effective public speech. The sound truck has become an accepted method of political campaigning. It is the way people are reached. . . .

''The present ordinance would be a dangerous weapon if it were allowed to get a hold on our public life. Noise can be regulated by regulating decibels. The hours and place of public discussion can be controlled. But to allow the police to bar the use of loud-speakers because their use can be abused is like barring radio receivers because they too make a noise. The police need not be given the power to deny a man the use of his radio in order to protect a neighbor against sleepless nights. The same is true here.

''Any abuses which loud-speakers create can be controlled by narrowly drawn statutes. When a city allows an official to ban them in his uncontrolled discretion, it sanctions a device for suppression of free communication of ideas. In this case a permit is denied because some persons were said to have found the sound annoying. In the next one a permit may be denied because some people find the ideas annoying. Annoyance at ideas can be cloaked in annoyance at sound. The power of censorship inherent in this type of ordinance reveals its vice.''

This is the only clear-cut expression by the Supreme Court of the United States. It is admitted in the majority opinion in the present case, and by all legal writers and commentators (62 Harv.L.Rev. 1228; 47 Mich.L.Rev. 1007; 97 U.Pa. L.Rev. 730; 34 Cornell L.Q. 626; 34 Iowa L.Rev. 681; 14 Mo. L.Rev. 194; 22 So.Cal.L.Rev. 416) that the later case of *Kovacs* v. *Cooper,* 336 U.S. 77 [69 S.Ct. 448, 93 L.Ed. 513, 10 A.L.R.2d 608], while casting some doubt on the holding in

the Saia case, because of the many opinions, has caused "hopeless confusion" in the field of regulation of sound trucks. There is no majority decision in the Kovacs case which holds, as the majority in effect does here, that sound trucks may be absolutely prohibited since three of the Justices (Reed, Burton and Vinson) upheld the ordinance on the ground that the state courts had interpreted it not as an absolute ban, but only as barring sound trucks that emitted "loud and raucous noises." The Saia case expressly points out that "[a]ny abuses which loud-speakers create can be controlled by *narrowly drawn* statutes." Also, as pointed out in the Saia case, an ordinance could be drawn relating to such sound trucks by regulating the volume of sound, the hours and places of use in the interests of the public peace and tranquillity without imposing either a prior, or absolute, restraint on the freedom of speech guaranteed by the First and Fourteenth Amendments to the Constitution of the United States. As was pointed out in an article in 22 So. California Law Review 416, 420, the crucial problem is one of differentiating between the right of local government legitimately to exercise proper police regulations which will encroach on constitutional rights, and the right of a group of individuals to be secure in their exercise of a constitutionally given freedom. A balance has been struck in other fields where individual freedoms must be somewhat circumscribed in the interest of the public good. No good reason appears why the same thing may not be accomplished in this field without the necessity of absolute prohibition.

The ordinance involved in the Kovacs case related to the use of sound trucks on the public streets, alleys or thoroughfares *within the city of Trenton,* New Jersey. The area prohibited in the ordinance here involved is not so circumscribed. In *State* v. *Headley,* (Fla.) 48 So.2d 80, an ordinance of the City of Miami prohibited the operation on *city* streets of vehicles to which mechanical loud-speakers had been attached. It was held there that the right of a citizen to use the public streets was not absolute and unconditional but might be controlled and regulated in the interest of the public good. The appellant in the Headley case was arrested for using a loud-speaker attached to his vehicle while on a busy downtown street which was highly congested with traffic. In *Brinkman* v. *City of Gainesville,* 83 Ga.App. 508 [64 S.E.2d 344], an ordinance prohibited the operation of a loud-speaker upon the streets of the city of Gainesville. The ordi-

nance was held constitutional as not violative of the freedoms of speech and religion. The ordinance involved in the case at bar makes unlawful the emission or transmission of ". . . any loud or raucous noise upon or from any public highway or public thoroughfare or from any aircraft of any kind whatsoever."

It may be agreed that Mr. Justice Reed was correct when he said (*Kovacs* v. *Cooper*, 336 U.S. 77, 81, 82 [69 S.Ct. 448, 93 L.Ed. 513, 10 A.L.R.2d 608]) that "[u]nrestrained use throughout a municipality of all sound amplifying devices would be intolerable." He added that "[a]bsolute prohibition within municipal limits of all sound amplification, even though reasonably regulated in place, time and volume, is *undesirable and probably unconstitutional* as an unreasonable interference with normal activities." (Emphasis added.)

I would affirm the judgment to the extent that it enjoins enforcement of clause (3) of subdivision (d) of section 2. of Ordinance No. 415 on the ground that it is unconstitutional on its face as an abridgment of freedom of speech guaranteed to the individual by the First and Fourteenth Amendments to the Constitution of the United States. I express no opinion concerning the constitutionality of the balance of the ordinance in question.

Traynor, J., concurred.

Respondent's petition for a rehearing was denied March 3, 1955. Gibson, C. J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.