Dave FASS et al., Plaintiffs,

v.

Frederick ROOS, etc., et al., Defendants.

Civ. A. No. 1060-59.

United States District Court
D. New Jersey.
June 24, 1963.

Joseph L. Freiman, Union City, N. J., for plaintiffs.

David D. Furman, Atty. Gen. of N. J., Trenton, N. J., Samuel L. Hirschberg, West New York, N. J., for defendant.

Before McLAUGHLIN, Circuit Judge, and COOLAHAN and COHEN, District Judges.

## McLAUGHLIN, Circuit Judge.

This is the aftermath of a New Jersey Sunday Closing Law case which has been fully and fairly litigated and completely resolved. It is prosecuted in good faith but at this stage, it, at the very least, shapes up as bordering on the frivolous.

It started out as a deliberate test case of the New Jersey Sunday Closing Law, N.J.S.A. 2A:171–5.8 to 171–5.18. There were two plaintiffs at that time, Dave and David Fass. They owned a retail floor covering store in West New York, New Jersey. Floor coverings are specifically included as "home furnishings" within the Sunday sale ban. On November 3, 1959, the Sunday Closing Act was made applicable to Hudson County, New Jersey which includes the Town of West New York. Plaintiffs' store had been open to the public for business on Sunday since 1956. It continued that practice after November 3, 1959 and the sales operations were precisely the same as on week days. On Sunday, November 29, 1959, the store was open for business as usual. It is admitted that the store has a full glass front and side on the two streets, the glass, about 11 feet high, extending from the sidewalk to the ceiling level. There are double entrance doors, also of glass. The full interior of the store can be seen from the public sidewalk. The ordinary person approaching the place would realize that the business being conducted there was the sale of floor covering. As Fass described the scene, it is not necessary to put or keep goods in or at the window because you can see the whole store through the window.

On November 29, 1959, at the time Dave Fass was arrested in his store charged with making a sale of merchandise there on that day in violation of the Act, the entrance door was open for admission of the public, the lights were on and four or five salesmen, in addition to Fass, were on duty when the particular sale of carpeting was made. While the complaint against Fass was pending in West New York, the complaint in this case was filed and a preliminary and permanent injunction sought staying the operation of the Sunday Law and asking that it be declared unconstitutional. On December 11, 1959, this court denied the application for a preliminary injunction. In addition, a stay of this suit was granted pending the determination of an action then before the New Jersey Supreme Court (Two Guys From Harrison, Inc. v. Furman, Attorney General, 32 N.J. 199, 160 A.2d 265) which directly concerned the constitutionality of the Sunday statute. On June 2, 1960, this court denied application for vacation of that stay and continued it pending conclusion of the West New York proceedings against Dave Fass and until determination by the United States Supreme Court of the various Sunday Closing appeals before it. The court opinion strongly urged that the West New York violation matter in which there had been a conviction in the municipal court be passed upon by the Hudson County Court of Common Pleas, as promptly as possible. Later there was an affirmance of that conviction and an appeal had to the New Jersey Supreme Court, 36 N.J. 102, 175 A.2d 193. The latter, in an exhaustive opinion, affirmed the conviction. The Court specifically considered and passed upon the conten-

tion of Fass that because of the exception granted him as a Sabbatarian under 2A:-171–4 the sale of carpeting could not be considered a violation of the Sunday Closing Act. Section 4 reads:

> "If any person charged with having labored or worked on Sunday shall prove to the satisfaction of the court that he uniformly keeps the seventh day of the week as the Sabbath, habitually abstains on that day from following his usual occupation or business and from all recreation, and devotes the day to the exercise of religious worship, and if the work or labor for which such person is *informed against* was done and performed in his dwelling house or workshop, or on his premises, and has not disturbed other persons in the observance of the first day of the week as the Sabbath, then the defendant shall be discharged. This section shall not be construed to allow any such person *to openly expose to sale* on Sunday any goods, wares, merchandise or other article or thing *in* the line of his business or occupation." (Emphasis supplied.)

Fass on that appeal, as a Sabbatarian, asserted exemption from his Sunday sale prosecution for exactly the same reasons as he is now urging to this court under his theory of the alleged vagueness of above quoted Section 4. As the New Jersey Supreme Court said regarding his contention, "He claims that immunity from prosecution is granted to all Sabbatarians, who observe Saturday religiously as described in section 4, and who do not sell their goods by hawking or crying them in the public streets or by maintaining open stands on the public streets or sidewalks, or, more generally, who do not conduct their business of selling in such manner as to interfere with or disturb the peace and tranquility of those seeking rest, recreation and diversion on Sunday."

And the Court held page 117 of 36 N.J., at page 201 of 175 A.2d:

> "If his place was open for the purpose of doing business indiscrimi-

nately with the public in the goods or wares usually sold therein, there was an open exposure to sale within the statutory proviso. Clearly the conduct of defendant's business as described above would have rendered the immunity inapplicable prior to 1959.

> "The state of Sunday closing regulation in New Jersey since enactment of L.1959, Chapter 119, indicates that the same view must be taken now. Apart from (1) the inferences to be drawn from both the history of Sunday closing legislation in England and in this country, (2) the plain meaning of the proviso withdrawing the immunity where the Sabbatarian openly exposes his goods to sale in the regular course of business, and (3) the emphatic language of Chapter 119 forbidding sale, attempt to sell, offer to sell, or engaging in the business of selling the listed items, the conclusion we have reached is expressive of the rationale of Two Guys from Harrison. The constitutionality of the limited Sunday restriction of Chapter 119 was sustained generally in that case on the theory that it probably represented an effort on the part of the Legislature to strike at the public evil associated with Sunday business activity where it was most pronounced."

The Court further said page 119 of 36 N.J., at page 202 of 175 A.2d: "On the basis of our conclusion that on the admitted facts relating to the nature of the business operation on Sunday, Fass openly exposed goods barred from sale by L. 1959, Chapter 119, the judgment of conviction can be affirmed without more." It went on " * * * to consider some further implications of the *section 4* immunity for Sabbatarians in the framework of the 1959 act" (emphasis supplied) and stated:

> "The suggestion that the prohibition against open exposure to sale only bans sales in public markets maintained by or licensed or author-

ized as such by public authorities or in public places, is not tenable. We find no reasonable support in history, in other jurisdictions, or in the language for such a narrow construction. In the face of modern commercial life, such an interpretation would amount to no limitation of any consequence at all. A Sabbatarian could open his business on Sunday and freely engage in indiscriminate sale of goods to the public in the five classes banned by the 1959 act. It would be permissible to advertise in the public press that he would be open for trade on Sunday, to have large 'Open' signs in his front windows on Sunday, to have such signs in neon lights, with arrows pointing to the entrance doorway, and the like. And all this in a community or county where the people had voted to adopt L.1959, Chapter 119. Such practice cannot be said to reasonably represent the legislative intention in withholding the immunity in cases of open exposure of goods to sale.

"Moreover, as Justice Frankfurter pointed out in McGowan, supra: [McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)]

" 'If it is assumed that the retail demand for * * * [the five classes of goods banned by the New Jersey Act of 1959] is approximately equivalent on Saturday and on Sunday, the Sabbatarian, in proportion as he is less numerous, and hence the competition less severe, might incur through the exception a competitive advantage over the non-Sabbatarian, who would then be in a position, presumably, to complain of discrimination against *his* religion.' 366 U.S. at p. 516, 81 S.Ct. at p. 1183, 6 L.Ed. 2d at p. 450. (Emphasis Justice Frankfurter's, but bracketed substitution ours. Of course, the New Jersey Act was not involved in McGowan.)

"Justice Frankfurter's observation is more strongly pertinent in the factual context of this case because Fass opens his store about 20 minutes after sundown on Saturday. Thus, if he has legislative permission to open on Sunday, he not only has the business advantage described in McGowan but the advantage is enhanced through his Saturday after sundown operation."

The Court concluded:

"Under all of the circumstances, the undisputed facts in this case warranted the finding of the County Court that Fass had openly exposed his merchandise to sale on the Sunday specified, and that section 4 of the act does not provide him with immunity from prosecution."

Thereafter Fass filed a petition for rehearing in which "Point III" was entirely devoted to the proposition that the exemption allowed by Section 4 was so vague it contravened due process. That petition was denied December 11, 1961. An appeal was taken to the United States Supreme Court with one of the primary grounds thereof that the phrase "to openly expose to sale" of Section 4 is so vague that it contravenes due process. New Jersey moved to dismiss the appeal. The United States Supreme Court in a per curiam opinion, 370 U.S. 47, 82 S.Ct. 1167, 8 L.Ed.2d 398 (1962), held:

"The motion to dismiss is granted and the appeal is dismissed. Treating the papers whereon the appeal was taken as a petition for writ of certiorari, certiorari is denied."

*There was no application to the Court for rehearing on the ground that it had not considered or ruled upon appellant's Point III or for any other reason.*

Plaintiffs have now returned to this court seeking to file an amended complaint. In the latter it is alleged that Section 4 and the enforcement thereof " * * * are in violation of the Fourteenth Amendment to the United States Constitution in that said statute denies the plaintiffs due process of law and is unconstitutional as against the plaintiffs herein."

The sole excuse for this action is because in New Jersey's brief in the appeal from the state decision appeared the paragraph:

"*Additionally,* it is appropriate to bring before this Court the fact that the appellant has never contended throughout the various State courts and proceedings that he has been denied due process by virtue of his conviction. The first such assertion appeared in appellant's Petition for Rehearing before the New Jersey Supreme Court where it was stated that the immunity section is so vague that it contravenes due process. The appellant has not been timely in raising this issue." (Emphasis supplied.)

Because we think it important to dispose of any question of alleged substance which might be raised by the proposed amendment the motion to file the amended complaint is allowed.

At this stage of the proceedings there was a formal, consented-to motion to dismiss David Fass as a plaintiff, which was allowed.

It is argued on behalf of the remaining plaintiff that it must be assumed that the United States Supreme Court completely ignored the primary ground of the Fass appeal to it because of an additional argument by New Jersey that it was not timely. It is true that until the petition for rehearing in the New Jersey Supreme Court the asserted obscurity of "openly exposed to sale" was not labeled as violative of the Fourteenth Amendment. However, its so-called obscurity was charged by plaintiffs from the beginning. It was the core of the state opinion and of the dissents. It was the main reason advanced to the United States Supreme Court on appeal and there was carefully designated as against the Fourteenth Amendment and due process. That Court had squarely before it the state opinion on the judgment being appealed. It had the sound reasoning of the New Jersey decision above quoted that "openly exposed to sale" pos-

sessed a plain, common sense meaning and what that meaning was. It had before it and was most familiar with its own comprehensive opinions in the historic Sunday Closing Cases. In one of them, McGowan v. Maryland, 366 U.S. 420, p. 460, 81 S.Ct. 1101, p. 1154, 6 L.Ed. 2d 393 (1961), Mr. Justice Frankfurter in his separate opinion said that he was in " * * * concurrence with The Chief Justice's principal conclusions * * *" in the Court opinion, also gave his view of the New Jersey Section 4. He found nothing obscure about it. He flatly stated (366 U.S. p. 517, n. 111, 81 S.Ct. p. 1184) that " * * * *the excepting provision [Section 4], by its terms, does not extend to Sunday selling by Sabbatarians.*" (Emphasis supplied.)

▇ It is our judgment that the United States Supreme Court in its decision in the state appeal disposed of the question now before us which had been at that time fully presented to it in the Fass appeal. In passing, the failure of appellants to file a petition for rehearing in that appeal is some indication of appellants' acquiescence in such view.

▇ While it is our thought, in line with what we have just said, that the legitimate end of this case followed the opinion of the Supreme Court of May 28, 1962, we should of course express our own views regarding plaintiff's declaration that the state Section 4 language "openly expose to sale", contravenes due process. It is interesting to note that in support of his argument respecting this, plaintiff hands us copies of his "Supplemental Brief" and of his "Petition for Rehearing" in the state appeal. He relies on three cases, United States v. Brewer, 139 U.S. 278, 11 S.Ct. 538, 35 L.Ed. 190 (1891); Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1938) and Cline v. Frink Dairy Co., 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1926). None of these is apposite to our facts. In Lanzetta, the words in question were "gang" and "known to be a member". The statutory provision in which these were contained condemned no act or

omission and the words on their face were ambiguous, indefinite and uncertain. In Brewer, election officers were required by statute to perform certain duties after the ballots had been cast; violation of some of their duties was alleged but no fraud or intent to affect the election or its result was charged, nor was there any allegation that the election or its result had been affected. In Cline, the statute made it unlawful to make "any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries" unless such persons conducted their operations "at a reasonable profit" and the products involved could not "otherwise be marketed." These loose terms, meaningless as far as practical enforcement is concerned, cannot be set up as reasonably comparable to the state law before us. The latter has been construed by New Jersey's highest court as meaning "If his place was open for the purpose of doing business indiscriminately with the public in the goods and wares usually sold therein, there was open exposure to sale within the statutory proviso". We must agree with the fundamental soundness of that conclusion. And it is in accord with applicable federal law. In McGowan itself, supra, 366 U.S. p. 428–429, 81 S.Ct. p. 1106, the Supreme Court held regarding a Sunday Closing Law exemption clause, far less concise than the one here:

"Another question presented by appellants is whether Art. 27, § 509, which exempts the Sunday retail sale of 'merchandise essential to, or customarily sold at, or incidental to, the operation of' bathing beaches, amusement parks et cetera in Anne Arundel County, is unconstitutionally vague. We believe that business people of ordinary intelligence in the position of appellants' employer would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation at a nearby bathing beach or amusement park within the county. See United States v. Harriss, 347 U.S. 612, 617–618 [74 S.Ct. 808, 98 L.Ed. 989]. Under these circumstances, there is no necessity to guess at the statute's meaning in order to determine what conduct it makes criminal. Connally v. General Construction Co., 269 U.S. 385, 391 [46 S.Ct. 126, 70 L.Ed. 322]."

United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 (1947), stresses that in construing a state statute, such as Section 4, " * * * the Constitution does not require impossible standards. The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more." Roth v. United States, 354 U.S. 476, 490, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), categorically follows the Petrillo standard.

New Jersey also urges that the interpretation of the New Jersey statute, N.J. S.A. 2A:171–4, is exclusively a state concern and not justiciable in a federal court. It is argued that we are faced with a clear instance of judicial construction and therefore bound by the state court interpretation of Section 4. We are satisfied that the point is substantial but in view of our above conclusions it is unnecessary to pass upon it at this time.

The facts are generally admitted and the findings regarding them are as appear in this opinion.

The conclusions of law are as appear in this opinion.

By the express agreement of the parties in open court this case has been submitted for decision on its merits.

The amended complaint will be dismissed with prejudice and for nothing holden.